## The Bay City Gas-Light Company v. The Industrial Works.

*Riparian rights: Boundary lines: Thread of the stream.* The boundary lines of
. water lots fronting upon a river in such a manner that their side lines strike
the shore at right angles with the middle thread of the stream, but at a dif-
ferent angle with the shore at that point, extend into the river at right angles
with the thread of the stream, without reference to the shape of the shore.—
*Clark v. Campau, 19 Mich., 328* cited and held decisive of the question.

There is no distinction in this regard between streams which are subject to
easements of passage and those which are not.

*Riparian rights: Docking line.* The fact that the city authorities, under the char-
ter, have fixed a docking line which is not parallel either with the thread of
the stream or with the shore, can have no bearing upon the determination of
boundaries.

*Riparian rights: Open sea: Rivers.* Controversies arising concerning riparian
rights upon waters having no middle thread properly so-called, like the open
sea, or a bay or other similar body of water, when the shore is the only tan-
gible element of computation or measurement, can have no bearing on the case
of rivers.

*Heard October 10.    Decided October 21.*

Case made from Bay Circuit.

*Marston, Hatch & Cooley,* for plaintiff.

*Luther Beckwith,* for defendant.

CAMPBELL, J.

The present action is brought to determine the bound-
aries of certain water lots in Bay City, extending into the
Saginaw River. They both belong to a series of lots
extending from one of the city streets towards the river in
such a direction that their side lines strike the shore at
right angles with the middle thread of the river, but at a
different angle with the shore at that point. The shore in
front of the city curves inward somewhat. The corpora-
tion of Bay City, some years since, established a dock line,
which, at the point in question, is nearly or quite parallel
with the shore, but which approaches the shore so as to be
at no considerable distance from it at a point below, where
a bridge crosses the stream.

The question presented for decision is, whether the side lines of the lots in question, as they extend into the river, should run at right angles with the thread of the stream, or at right angles with the shore at the point of departure. The difference is such that within the line permitted for docking, the divergence is about eighty-seven feet.

This question was decided in *Clark v. Campau, 19 Mich. R., 328,* where it was held the lines were to be governed by the course of the stream, and the land bounded by lines drawn at right angles with the central thread. Any other rule would subject riparian owners to have their entire access to the stream and all their docking privileges cut off, whenever the local curve of the shore should be such that a line drawn at right angles with their neighbor's shore line would cross in front of them—a result which would be inevitable where the shore is not altogether straight and parallel with the middle of the stream, and which would also cause great confusion with every subdivision of ownership. It happened in that case that the shore line followed closely the course of the river, and lines drawn from the shore were practically identical with those drawn from the central line; but the decision was based upon the principle that the course of the river itself governed, and not the shore.

There is no distinction in this regard between streams which are subject to easements of passage, and those which are not. Even the beds of navigable tide waters are subject to the disposal of state laws, saving always any public rights that may exist in them; and it is the settled law of this state that any use of lands under rivers, which is compatible with the full enjoyment of the public easement, belongs with the upland to which it was originally appurtenant, unless sold or granted separately so as to sever it. Even in streams not susceptible of any public use, it can seldom happen that any riparian proprietor can occupy by erections any large portion of its bed, except where it is

dammed. He cannot so use it as to destroy the benefits of the water to his neighbors. In each case the right of every owner is subject to some limitations; and he is compelled to use his own property so as not to injure the rights of others, whether public or individual.

The right of docking out, so as to secure the full benefit of the water front, is limited by the rule that it must not seriously impair the right of navigation. In order to prevent any dispute as to what wharfing will be such an encroachment, it has been provided in some of our city charters that the city may fix a dock line, beyond which such erections shall not extend. In doing this the authorities are supposed to consult the public convenience, and to draw the line in such manner as to subserve this. It is usual, and practically almost necessary, to make the frontage thus defined follow straight lines of considerable length, avoiding angles as much as possible, and paying no attention to the sinuosities of the shore. Such lines will not necessarily or usually be exactly parallel either with the shore or with the thread of the stream. They can have no bearing whatever upon the determination of boundaries, and are meant to determine at what line the depth of water will be found sufficient to meet all the necessities of navigation. So far as they are valid, it is as limits reasonably and impartially fixed, beyond which all are forbidden to wharf out, and within which every person may lawfully improve his own property. But with the ownership of property the city authorities have no concern.

In all cases of rivers and other running streams which serve as exterior boundaries, the common law, like the law of nations, recognizes the boundary as the middle of the stream, where there is no other intention manifested. Every proprietor whose rights are not terminated at the shore (as they were generally in tide waters) has a right extending to that central thread, and no one on either side reaches beyond it. Whatever his shore lines may be, his exterior line is in the middle of the stream. Accordingly,

no other proprietor can lawfully interpose so as to cut him off from that line. But any division or boundary that does not take the central thread as a point of departure, will be certain in many cases to exclude the owner from such an extent, and may deprive him of any water rights whatever. Where there are large indentations of shallow water on one side of a stream, with no corresponding bends on the other, it would often happen that the owner of a frontage within such a locality would be entirely shut in within its outer points. And a person holding a large tract, and subdividing it, could hardly fail by any subdivision, if the shore is not perfectly straight and the river of uniform width (two conditions never found in natural streams), to cause serious interferences among the adjacent fronts. If the bounds are all to be governed by lines drawn at right angles from the thread to the shore *termini,* as near an approach will be made to an unvarying measurement as is possible under any ordinary circumstances. It is possible that any rule which is adopted will in some cases be found difficult of application, and clashing with some other principle with which it may become necessary to harmonize it as far as may be. But no other rule has ever been suggested which will give every proprietor his title to the thread of the stream; and, as held in *Clark v. Campau,* we regard this rule as settled and reasonable.

Very much of the confusion which is supposed to exist on this subject has arisen from confounding things quite dissimilar. The controversies arising concerning riparian rights upon waters having no middle thread, properly so called, can have no bearing on rivers. Whether the proprietary right is confined by high or low water mark, or extends further, it is manifest that upon the open sea or on a bay or other body of water having no defined stream running in a confined and continuous bed, the shore may be the only tangible element of computation or measurement, and it has very properly in such cases been regarded as the most important. But even there some regard has

28 MICH.—24.

usually been paid to the common sense rules which would prevent inequalities from being created by any blind adhesion to the accidental conformation of the shore line at the extremity of any riparian property; and regard is paid to extent, as well as to other considerations.—See *Crook v. Corporation of Seaford*, L. R., 6 Ch. Ap., 551. It is unnecessary to refer to illustrations of this, as they would be of no service in determining the case before us, which is disposed of by our previous decisions.

The defendant's possession was held in conformity with the principles which we regard as the proper ones to determine the rights of the parties. As the case made finds all the facts, it follows that the judgment below must be reversed, and judgment rendered in favor of defendants.

CHRISTIANCY, CH. J., and GRAVES, J., concurred.

COOLEY, J., did not sit in this case.