## Wytheville.

### GRONER & ANOTHER v. FOSTER & OTHERS.

#### June 17, 1897.

1. RIPARIAN OWNERS—*Low-water mark—How flat apportioned—Equity Juris-diction—Portwarden's line.*—Every riparian owner owns the land, subject to certain designated provisions, within the boundaries of his lines extended to low water mark. He also has the right to the water frontage of his land. This right includes, amongst others, the right of access from the front of his line to the navigable part of the water course, and also to the flats, or soil under the water, from low-water mark to the navigable line of the water course whereon he may erect wharves, piers, or bulkheads for the use of himself or the public, provided he does not obstruct navigation, nor injure private rights of others. He has the right to have the extent of such enjoyment upon the line of navigability determined and marked, and its boundaries defined, and a court of equity is the proper tribunal to make the apportionment and determine and establish the boundary lines of the coterminous owners. In making the apportionment, however, between coterminous owners, the rule of division is, as the whole shore-line of the coterminous owners at low-water mark is to the whole line of navigability so is each one's share of the shore line to his share of the line of navigability. The flats, or land under water, are to be thus divided regardless of the character or value of the flats, to be laid off as directly in front of the lands of each owner as a just regard to the rights of coterminous owners will permit. The portwarden's line, as defined by the persons invested with the power to establish it, is binding upon the courts in apportioning the water front amongst the parties entitled thereto.

Argued at Richmond.    Decided at Wytheville.

Appeal from a decree of the Corporation Court of the city of Norfolk, pronounced December 31, 1894, and from a decree of the Court of Law and Chancery of said city, to which this cause had been removed, pronounced October 23, 1895,

in a suit in chancery wherein the appellees were the complainants, and the appellants were the defendants.

*Reversed.*

The object of this suit was to establish the lines between the coterminous owners of certain lands lying under water between the shore and the Portwarden's lines on Elizabeth river and Tarrant's or Edmund's creek, and in the meantime to enjoin the defendants from erecting structures on said land claimed by the complainants.

*White & Garnett, Tunstall & Thom* and *Osborne & Groner,* for the appellants.

*Walke & Old* and *R. H. Baker & Son,* for the appellees.

RIELY, J., delivered the opinion of the court.

Every riparian owner has the right to the water frontage belonging by nature to his land. This right includes, among others, the right of access from the front of his land to the navigable part of the water course, and also the right to the soil under the water between his land and the navigable line of the water course, whereon he may erect wharves, piers, or bulkheads for his own use, or the use of the public, subject to such rules and regulations as the Legislature may see proper to impose for the protection of the public. Gould on Waters, sec. 149; *Norfolk City* v. *Cooke,* 27 Gratt. 430; *Alex. & Fred. Railway Co.* v. *Faunce,* 31 Gratt. 761; *Dutton* v. *Strong,* 1 Black U. S. 23; and *Yates* v. *Milwaukee,* 10 Wall. 497. In this State, the enjoyment of the right is made subject by statute to the limitation that its exercise shall not result in the obstruction of navigation, nor in other injury to the private rights of any person. Code of Va., sec. 998.

Each riparian proprietor is entitled, in conformity to such right, to have the extent of its enjoyment upon the line of

navigability of the water course determined and marked, and his proper share of the flats, or land under the water, for the purposes aforesaid set apart, and its boundaries defined. A court of equity has jurisdiction, and is the proper tribunal, to make the apportionment, and to determine and establish the boundary lines of the coterminous owners.

In making the apportionment the prime object, upon plain principles of justice, should be to give to each proprietor of the shore, and as directly in his front as practicable, a parcel of the land under the water of a width at its outer end upon the line of navigability proportioned to that which it has at the inner or shore end. *Wonson* v. *Wonson*, 14 Allen 71; and Gould on Waters, secs. 162 and 163.

It is apparent upon the most cursory reflection that this cannot be attained by a fixed rule of extending out to the line of navigability of the water course the divisional lines between the proprietors of the uplands in the same direction that these lines reach the shore. The frequent curvature, which generally characterizes the form of the shore, forbids its adoption as a rule of division. It would only answer where the line of the shore was straight, the line of navigability equal in length and parallel with it, and the divisional lines approached the shore at right angles. Where the line of the shore or the line of navigability curves, either inwardly or outwardly, or the divisional lines of the uplands approach the shore at different angles, their projection in the same direction out to the line of navigability would necessarily, and unjustly, cause them to encroach upon the riparian rights of the several coterminous proprietors in the water frontage, and deprive some one or more of them of all access to, and benefit of, the navigable part of the water course.

A just rule of division is to measure the length of the shore and ascertain the portion thereof to which each riparian proprietor is entitled; next measure the length of the line of navagibility, and give to each proprietor the same proportion

of it that he is entitled to of the shore line; and then draw
straight lines from the points of division so marked for each
proprietor on the line of navigability to the extremities of his
lines on the shore.    Each proprietor will be entitled to the
portion of the line of navigability thus apportioned to him,
and also to the portion of the flats, or land under the water,
within the lines so drawn from the extremities of his portion
of the said line to the extremities of his part of the shore.
The general rule of division, therefore, is, as the whole shore
line is to the whole line of navigability so is each one's share
of the shore line to each one's share of the line of navigability.
The lines so drawn will be parallel, or diverge, or converge,
as the navigable water line happens to be equal and parallel
with, or is longer, or shorter, than the shore line.

The rule, stated above, is that which has been adopted in
apportioning riparian rights between coterminous owners in
cases of a simliar nature.    It is the rule that was early adopt-
ed by the Supreme Court of Massachusetts in *Deerfield* v.
*Arms,* 17 Pick. 41, which was the case of an apportionment
of a parcel of land formed by alluvial deposits on the margin
and bed of Deerfield river, and has since been not only ad-
hered to in that State, but has been followed by the Supreme
Court of the United States, and by the highest courts of a
number of the States.    *Johnston* v. *Jones,* 1 Black 222-23;
*O'Donnell* v. *Kelsey,* 10 N. Y. 412; *Batchelder* v. *Keniston,*
51 N. H. 496; *Del. L. & W. R. R. Co.* v. *Hannon,* 37 N.
J. Law, 276; *Lumber Co.* v. *Peters,* 87 Mich. 498; *Northern
Pine Land Co.* v. *Bigelow,* 84 Wis. 157.

The rule, as was suggested by Chief Justice Shaw, in *Deer-
field* v. *Arms, supra,* may require modification in some cases
on account of its peculiar circumstances, but is the one to be
generally applied in cases of this kind.

The rule laid down above was the one adopted by the lower
court in making the apportionment in the case at bar, and
we do not understand that either side seeks to impugn it, or

questions its correctness.    It is, therefore, unnecessary to discuss or consider it further.

The complaint of the appellant relates to the subject, as respects the navigable water line, selected by the court for the apportionment.    Their contention is that the court did not apportion the whole of the navigable water line in front of the lands of the several proprietors, but excluded a large part of it, whereby the appellants' portion of it, and consequently their share of the flats or land under the water, was greatly diminished, and an undue share of the line of navigability and of the flats was given to the appellees.

"The Board of Harbor Commissioners of Norfolk and Portsmouth" were authorized by the statute law of the State "to regulate and define the portwarden's line along the water front of the cities of Norfolk, Portsmouth, and Norfolk county, and the Elizabeth river and branches thereof for five miles above and below the limits of said cities and county," and "to fix the lines along said rivers within which riparian owners may erect wharves, docks, and other proper structures and fixtures for commercial and manufacturing purposes." Acts 1881-2, ch. 205, p. 216; Acts 1883-4, ch. 148, p. 184; Code of Va., secs. 2010 and 2011; and Acts 1889-90, ch. 371, p. 623.

The said commissioners, under this statutory authority, established the portwarden's line in Elizabeth river in front of the riparian proprietors, who are the parties to this suit.    The portwarden's line as thus established defines the line of navigation of the river, and fixes it as the limit out to which the riparian owners may "erect wharves, docks, and other proper structures and fixtures for commercial and manufacturing purposes."

The river widens considerably at the locality in question, and it appears that this circumstance affects materially the course of its line of navigability.    The portwarden's line as established by the board of commissioners begins at Fort

Norfolk, and runs in a straight line a distance of 1,635 feet,
and then turns and runs at nearly a right angle a distance of
1,500 feet to the point where Tarrant's or Edmund's creek
empties into Elizabeth river. It does not extend into or
along the creek, but applies wholly to the river and is in
front of the lands of the parties hereto. The *locus in quo*
may be said to conform to a right angle triangle, the port-
warden's line forming the two sides and the line of the shore
the hypothenuse. All the water within the lines of the tri-
angle is a part of Elizabeth river. The water of Tarrant's or Ed-
mund's creek forms no part of it. The court below in making
the apportionment between the riparian proprietors only con-
sidered and apportioned that part of the portwarden's line
(1,635 feet) running from Fort Norfolk to the point where it
turns and runs to the mouth of the said creek. The result of
the apportionment was to give to the appellants, who own,
including the interests of the parties since purchased by them,
819.5 feet of the shore line at low water mark, only 604.8
feet on the portwarden's line, and to give at the same time
to the Webb heirs, whose land runs to the creek, and who
only own 258 feet on the shore, 190.04 feet on the portwar-
den's line, in so far as it was apportioned; and also the whole
of that part of the portwarden's line of 1,500 feet running to
the mouth of the creek. Of this the appellants complain,
and, we think, very justly. We are of opinion that the court
erred in not apportioning among the parties, in accordance
with the rule it adopted for the purpose, the whole of the
portwarden's line. Each riparian proprietor was entitled
under the law to his proper proportion of the whole line, to
be laid off to him as directly in front of his land as a just re-
gard for the rights of coterminous owners would permit, and
we can conceive of no valid ground for the exclusion of any
part of it in making the apportionment.

　　It was suggested in argument that the part of the portwar-
den's line, which was excluded in making the apportionment,

was less valuable than the part which was divided. Of this, there is no evidence in the record. If, however, such were the fact, we know of no authority for the court to take that matter into consideration in apportioning the water front, and it does not seem proper that it should do so. The apportionment is not the partition of a subject held in common in which all the owners have an undivided interest in each and every part thereof, as in the case of land held by tenants in common, whose shares are to be laid off to them, when partition is made of the land, according to the extent of the interest of each, on the basis of equality in value, but, in the case at bar, it is the apportionment of a subject, in which the interest of each owner is separate, and needs only to be segregated in order to prevent encroachment upon the rights of one another; and although one owner may receive in the apportionment a water front of less value than some one else, he cannot be heard to complain, provided he has received the dimensions to which his land entitles him. The result is an incident of the location of his land, and cannot be considered by the court in apportioning the water front.

"The Board of Harbor Commissioners" was given full power by the Legislature to regulate and define the portwarden's line, and to prescribe the limit to which riparian proprietors might build wharves, docks, and other structures for commercial and manufacturing purposes. It is to be presumed that the members of the board properly performed their duty, and duly considered all the circumstances affecting the propriety of the line defined by the board, and the utility and value of every part of it for all the purposes for which it was established. And, as so defined, it is binding upon the court in apportioning the water front among the parties entitled thereto.

The appellees assigned as cross error the decision of the court that the low water mark opposite the high land must be taken as the shore line in apportioning the water front

among the riparian proprietors, and that to this end the side lines of the lands should be continued in the same direction out to the low water mark.

. It is very true that at common law the title of the proprietor of the upland only extended to ordinary high water mark, and that the title to the space between high and low water marks was in the king for the use of the public. But the law in this respect, so far, at least, as relates to the soil, has long since been altered in Virginia. As early as 1679, it was ordered and declared by the Legislative Assembly of Virginia, that "every man's right, by virtue of his patent, extends into the rivers or creeks so far as lower water mark, etc." (*Garrison* v. *Hall*, 75 Va. 159. and 1 Lomax Dig. 661); and the present statute declares that, subject to certain designated provisions, "the limits or bounds of the several tracts of land lying on the said bays, rivers, creeks, and shores, and the rights and privileges of the owners of such lands, shall extend to low water mark, but no further, unless where a creek or river, or some part thereof, is comprised within the limits of a lawful survey." Code of Va., sec. 1339. See also 1 Rev. Code of 1819, ch. 87, p. 341.

Thus the limits or boundaries of the several parcels of land under considertion were extended, by operation of law, down to ordinary low water mark, and the right to the soil between ordinary high and low water mark annexed "as incident or appurtenant to the adjacent land." *French* v. *Bankhead*, 11 Gratt. 160.

The limits or boundaries of the lands being extended by the law down to low water mark, it necessarily follows, in the absence of any direction in the statute to the contrary, that they must be extended in the same direction that they reach ·ordinary high water mark. It does not seem to us that the statute reasonably admits of any other construction. To extend a limit or bound is to extend a line, and to extend a line

is to carry it forward, to prolong it, and to prolong it means primarily to continue it in the same direction.

We were referred, in this connection, by the learned counsel of the appellees to a somewhat similar statute of Massachusetts, and to the construction placed upon it by the Supreme Court of that State, but it is sufficient to say that the language of our statute is materially different from the statute of that State, and must receive a different construction.

The lower court having erred in excluding a part of the portwarden's line in making the apportionment of the water front between the parties, the decrees appealed from must, for that reason, be reversed, and the cause remanded for a new apportionment in accordance with the views herein expressed.

*Reversed.*