# Richmond.

## Lambert's Point Company v. Norfolk and Western Railway Company.

March 14, 1912.

Absent, Cardwell, J.

1. Navigable Waters—*Irregular Shore Lines—Apportionment of Water Front.*—Where a large portion of the shore lines of adjacent riparian owners is straight, it is not necessary that this portion of their lines should be taken into consideration in determining their relative proportion of the flats and land under water at points where the shore lines are curved and irregular, nor in the establishment of the division lines between their properties at such points.

2. Navigable Waters—*Riparian Owners—Apportionment of Water Front.*—The owner of land upon a water course is entitled, in the apportionment of the water front, to have his portion thereof laid off as nearly in front of his land as is practicable.

3. Navigable Waters—*Riparian Owners—Apportionment of Water Front—Port Warden's Line.*—In the apportionment of the water front and in fixing the boundary line between two adjacent riparian owners, if the shore line and the port warden's line are parallel, it makes no difference which one of them is treated as the base line; but where they are not parallel, the proper rule, in waters having no defined stream running in a confined and continuous bed, is to treat the shore line as the base line, and extend the lines of the port warden's line as nearly as practicable in front of the land of the riparian owner. The port warden's line establishes the line of navigability, and shows how far into the water course the riparian owner may improve his property; but that line can ordinarily have no effect in the determination of the boundaries of the riparian owners as between themselves. They derive their rights from grants from the Commonwealth and the statutes of the State.

4. Navigable Waters—*Riparian Owners—Water Front—How Ascertained.*—In ascertaining the shore lines of adjacent riparian owners, with a view to apportioning the water front, it is not proper to take into consideration the shore lines as filled in by one of them, but the front should be ascertained as if the filling in had not been done.

Appeal from a decree of the Circuit Court of the city of Norfolk. Appeal by the complainant and cross appeal by the defendant.

*Affirmed.*

The opinion states the case.

*G. M. Dillard,* for the appellant.

*Robert M. Hughes* and *W. L. Williams,* for the appellee.

Buchanan, J., delivered the opinion of the court.

The appellant, Lambert's Point Company, and the appellee, Norfolk and Western Railway Company, are adjoining land owners on the shore of Elizabeth river. This suit was brought by the appellant to have "the extent of its enjoyment of the flats and land under the water and of the line of navigability of the said water in front of its land, at Lambert's Point," determined and set apart, and the division line over said flats between the properties of the appellant and the appellee defined and established.

With the action of the court in fixing the rights of the parties and establishing the division line between their properties neither party is satisfied; one has appealed, and the other has assigned cross-errors. In the view we take of the case, the errors and cross-errors assigned may be considered together.

In making the apportionment sought, and in determining and establishing the division line between the properties, the court was governed by the principles laid down in the case of *Groner* v. *Foster,* 94 Va. 650, 27 S. E. 493, which was also a controversy between riparian owners on the shore of Elizabeth river.

In this case, that portion of the shore line of both parties at Lambert's Point taken into consideration in making the apportionment and in establishing the boundary line between the two properties was irregular and curved, though not so much so as in *Groner* v. *Foster.* The port warden's line, or line of navigability, in front of said portion of the properties of the parties, was longer than, and not parallel with, the shore line. There is nothing

272 LAMBERT'S POINT CO. v. NORFOLK & W. R. CO., 113 VA. 270.

Opinion.

in the facts of this case to take it out of the general rule laid down in *Groner* v. *Foster*.

The court did not, in making the apportionment in this case, take into consideration the whole shore line of both parties and the whole of the port warden's line in front of them, and its failure to do so is assigned as error by the appellant.

It appears that the shore line on the northern portion of the appellant's land, and the shore line on the southern portion of the appellee's land, are almost continuing straight lines, and as to them there is practically no dispute as to the rights of the parties. This being so, we do not see that there was any necessity for taking into consideration the shore lines of the entire front of both properties, which were nearly two miles in length, in order to ascertain the rights of the parties where the shore lines were curved and irregular, and to determine and establish the division line between their properties, which latter object seems to have been the principal object of the suit.

The appellee insists that the court, in establishing the division line between the parties, erred in not running that line at right angles from the port warden's line to the point where the two properties corner on low water mark.

Section 840a, sub-section 31, of Pollard's Code (1904) provides that any person owning land upon a water course may erect a wharf on the same, or pier, or bulkhead, provided navigation be not obstructed nor the private rights of any person injured thereby. Such owner is, therefore, entitled in the apportionment of the water front to have his portion thereof laid off as nearly in front of his land as is practicable. *Groner* v. *Foster, supra*, p. 652. Where the shore line and the port warden's line are parallel, it would make no difference which of them was treated as the base line; but where they are not parallel, then the proper rule, in waters like Elizabeth river, having no defined stream running in a confined and continuous bed, is to treat the shore line as the base line, and extend the lines of the port warden's line as nearly as practicable in the front of the land of the riparian owner. The port warden's line establishes the line of navigability, and shows how far into the water course the riparian owner may improve his property; but that line can ordinarily have no effect in the deter-

mination of the boundaries of the riparian owners as between themselves. They derive their rights from grants from the Commonwealth and the statutes of the State. The port warden's line has no effect upon their property rights beyond fixing the line of navigability, which they must respect in improving their water fronts. *Bay City, &c. Co.* v. *Industrial Co.*, 28 Mich. 182, 184; 3 Farnham on Waters, sec. 841, p. 2479.

"Very much of the confusion," it was said in *Bay City, &c. Co.* v. *Industrial Co., supra,* "which is supposed to exist on this subject has arisen from confounding things quite dissimilar. The controversies arising concerning riparian rights upon waters having no middle thread, properly so called, can have no bearing on rivers. Whether the proprietary right is confined by high or low water mark, or extends further, it is manifest that upon the open sea, or on a bay or other body of water having no defined stream running in a confined and continuous bed, the shore may be the only tangible element of computation or measurement, and it has very properly, in such cases, been regarded as the most important. But even then some regard has usually been paid to the common sense rules which would prevent inequalities from being created by any blind adhesion to the accidental conformation of the shore line at the extremity of any riparian property; and regard is paid to extent, as well as to other considerations."

In *Blodgett* v. *Davis,* 87 Mich. 498, 507, 49 N. W. 917, 919, 24 Am St. Rep. 175, it was said: "We cannot deal with Green Bay as we could with the rivers in the State, where the lines are to be drawn at right angles to the thread of the stream. The rules laid down for the boundary of owners of land bordering upon the ocean and great inland seas are more proper for the disposition of the case before us."

The manner in which the commissioner, whose action in this respect was approved by the trial court, ascertained the shore line of the appellee's property is assigned as error.

It appears that in front of a portion of its land at Lambert's Point the appellee has filled in and built wharves, etc., out to the port warden's line. The appellee insisted that its shore line should be ascertained by taking into consideration the shore

35

line filled in by it, instead, as was done by the commissioner, of ascertaining the shore line as if the filling in had not been done. The action of the commissioner was clearly right, and his reasons therefor conclusive of the question. The contention of the appellee, he says, would have given the "railway company, as a basis of apportionment, a much greater extent of shore line than I deem it is entitled to. The railway company undoubtedly has a right to fill in this area, and the filled in portion belongs to it, but I do not think that by making this improvement, which it had a right to make, and which the land company could not prevent its making, it can thereby enlarge its riparian rights and advance the division line (which has always in contemplation of law existed, but has not been judicially ascertained) between its riparian rights and the riparian rights of the land company, the adjoining owner. If this contention were sound, it would lie in the power of one riparian owner, by its own voluntary act, which could not be prevented by the adjoining owner, to increase its riparian rights, and encroach upon the riparian rights of the other adjoining owner to any extent.    *    *    *"

The other assignments of error on either side are so connected with or dependent upon the questions which we have considered and disposed of, it will be unnecessary to consider them in detail, but it will be sufficient to say that, upon the whole case, we see no error in the decrees appealed from, and that they must be affirmed.

*Affirmed*