■ FREEPORT BAY MARINA, INC., et al., Individually and Doing Business as FREEPORT MOTOR INN AND BOATEL, Respondents-Appellants, v AL GROVER, Individually and Doing Business as AL GROVER'S HIGH AND DRY MARINA, INC., et al., Appellants-Respondents. (Action No. 1.) APACHE REALTY CORP. et al., Appellants-Respondents, v CHRISTOPHER B. CREAMER et al., Individually and Doing Business as FREEPORT MOTOR INN AND BOATEL, et al., Respondents-Appellants, and TOWN OF HEMPSTEAD, Appellant-Respondent. (Action No. 2.)—In two actions to, *inter alia,* determine title to real property pursuant to RPAPL article 15, (1) Al Grover individually and doing business as Al Grover's High and Dry Marina, Inc., Gro-Grove Realty Corp. and Apache Realty Corp. as defendants in action No. 1 and plaintiffs in action No. 2, and the Town of Hempstead as a defendant in actions Nos. 1 and 2 separately appeal from an order and judgment (one paper) of the Supreme Court, Nassau County (Becker, J.), dated April 19, 1988, which, after a joint nonjury trial of the two actions, *inter alia,* established certain riparian rights in and around the North Basin Cove in the Town of Hempstead, and (2) the Freeport Bay Marina, Inc., and CBC Seneca Corp., doing business as Freeport Motor Inn and Boatel, as plaintiffs in action No. 1 and defendants in action No. 2, and Christopher B. Creamer, Anne Blee and Ronald A. Blee as defendants in action No. 2 cross-appeal from stated portions of the same judgment.

Ordered that the appeal of the Town of Hempstead is dismissed, without costs or disbursements, pursuant to stipulation of the parties dated August 19, 1988; and it is further,

Ordered that the order and judgment is modified by (a) deleting from subdivision 3 of the sixth decretal paragraph thereof the words "Apache Realty Corp." and substituting therefor the words "Gro-Grove Realty Corp." and (b) deleting the seventh and eleventh decretal paragraphs thereof; as so modified, the order and judgment is affirmed, without costs or disbursements, and the matter is remitted to the Supreme Court, Nassau County, for further proceedings in accordance herewith.

The nongovernmental parties to this appeal own real property fronting on or abutting the North Basin Cove, a small body of water on the west shore of Freeport Creek in Nassau County. A dispute arose among them concerning their respective rights to the use of the cove and the plaintiffs Freeport Bay Marina, Inc. and CBC Seneca Corp., doing business as Freeport Motor Inn and Boatel (hereinafter the plaintiffs) commenced action No. 1. Their complaint set forth three

causes of action: the first sought a declaration, pursuant to RPAPL article 15, with respect to their riparian rights in the cove; the second sought an injunction prohibiting any interference with or encroachment upon those rights; and the third sought damages for any interference with those rights that might have already occurred. Preliminary injunctive relief was granted to the plaintiffs, pending the outcome of the lawsuit.

The defendants Al Grover, individually and doing business as Al Grover's High and Dry Marina, Inc., Gro-Grove Realty Corp., Apache Realty Corp. and the Town of Hempstead (hereinafter the defendants) submitted answers denying the material allegations in the complaint and all, except for the Town of Hempstead, counterclaimed for relief similar to that sought by the plaintiffs. The defendants then (again with the exception of the Town of Hempstead) instituted a separate action (action No. 2) for essentially the same relief requested in their counterclaims, but added parties and increased the area of dispute.

A joint nonjury trial was thereafter held and it was stipulated that the trial would be bifurcated so that the declaration of riparian rights would be made prior to and separate from the determination as to damages. The trial itself essentially focused on three issues.

The first issue involved the determination of how the riparian rights of the parties should be apportioned within the cove. It was stipulated that the appropriate method of apportionment would be the so-called "proportional" method; however, there was still a question as to how the proportional method should be applied.

The proportional method has been recognized in New York since as early as 1852 in *O'Donnell v Kelsey* (10 NY 412; *see also, People ex rel. Cornwall v Woodruff*, 30 App Div 43, *affd* 157 NY 709). In *Groner v Foster* (94 Va 650, 652-653, 27 SE 493, 494), the court, citing *O'Donnell v Kelsey (supra)*, formulated the following step-by-step application of the method: "measure the length of the shore and ascertain the portion thereof to which each riparian proprietor is entitled; next measure the length of the line of navigability, and give to each proprietor the same proportion of it that he is entitled to of the shore line; and then draw straight lines from the points of division so marked for each proprietor on the line of navigability to the extremities of his lines on the shore. Each proprietor will be entitled to the portion of the line of navigability thus apportioned to him, and also to the portion of the

flats, or land under the water, within the lines so drawn from the extremities of his portion of the said line to the extremities of his part of the shore".

The plaintiffs were in favor of the application of the method as formulated in *Groner v Foster (supra)* but the defendants were not. The defendants proposed a modification of the proportional method which would take into account each party's ratable proportion of the cove's surface area. Under the proposed modification each party's prorated share of the line of navigability would be awarded as in *Groner v Foster (supra);* however, the surface area in the cove would be awarded in the same proportion as their frontage was to the entire frontage of the cove. To achieve this allocation of the area within the cove, crooked or angular lines (as opposed to straight lines), of necessity, would have to be drawn from the points of division so marked for each party on the line of navigability to the extremities of each party's lines on the shore.

The court rejected the modification proposed by the defendants and apportioned the riparian rights of the parties within the cove using the traditional method. On appeal the defendants claim that this was error. We disagree.

It is clear that the court's application of the proportional method was equitable and in keeping with the long-standing principle that the right of direct access from a landowner's entire frontage to its share of the line of navigability is paramount *(see, Town of Hempstead v Oceanside Yacht Harbor,* 38 AD2d 263, *affd* 32 NY2d 859; *see also, Jenks v Miller,* 14 App Div 474; *Consumers Coal & Ice Co. v City of New York,* 181 App Div 388). The modification proposed by the defendants, as the court correctly noted, would unfairly encroach upon Seneca's right of direct access to Freeport Creek. The actual size of the waters encompassed by the connecting of the dimensions under the proportional method is secondary to the right of access to the line of navigability from the landowner's entire frontage, and we therefore conclude that under the circumstances of this case, the court's method of apportioning the area within the cove was proper.

The second issue focused on at trial was whether Gro-Grove Realty Corp. (hereinafter Gro-Grove) had title to certain frontage on the cove. The court concluded that it did not and we agree.

The record reveals that shortly after Gro-Grove purchased its property in 1969 it filled in and bulkheaded its shoreline to

the point where it included a triangular portion of the cove that could not be found in prior deeds in the chain of title. Thus the court correctly found that Gro-Grove did not have title to that triangular portion of the cove, and correctly applied the proportional method of apportionment within the cove based on the length and configuration of the original shoreline of Gro-Grove's property.

The third and final issue considered at trial involved the determination of the riparian rights of Gro-Grove and Freeport Bay Marina, Inc. with respect to the waters of Freeport Creek in an area outside the cove where their lands join at the southerly headlands of the cove. This is an area where an inlet, or what was referred to by the court as a "lagoon", was formerly located. Freeport Bay Marina, Inc. contended that there had been a long-term acquiescence by prior and present owners of the properties, apportioning their respective riparian rights to the north and south of their upland boundary lines as extended easterly to the navigable channel line of Freeport Creek. Gro-Grove, on the other hand, contended that such acquiescence never existed and that it was entitled to riparian rights for a short distance along the northerly most portion of its easterly boundary line that abuts the waters of the cove to the south of the boundary line. The court concluded that there was insufficient evidence of acquiescence on the part of the parties and that, therefore, the area should be divided by drawing a line "from the midpoint on the mouth of where the old lagoon was once situate, to the nearest point in the midline of the navigable channel of Freeport Creek". We agree with the court's determination.

We note, however, that although the court, in its memorandum decision dated August 21, 1987, correctly decided how to apportion the areas of dispute and defined in a very general way how the various points should be drawn and connected, the judgment, which was issued eight months later, and which purported to establish the actual lines, fails to provide the necessary guidance in three respects.

First, in defining the configuration of Gro-Grove's boundaries, the judgment contains, in subdivision 3 of the sixth decretal paragraph, a metes and bounds description referring to "a point on the shoreline of the cove where the property of Apache Realty Corp. adjoins that of CBC Seneca Corp." This description, however, is physically impossible but does make sense if "Gro-Grove Realty Corp." is substituted for "Apache Realty Corp." The judgment, therefore, must be modified accordingly.

A second problem involves the placement of the Freeport Bay Marina, Inc./Gro-Grove boundary line. The seventh decretal paragraph provides, in pertinent part, that the Freeport Bay Marina, Inc./Gro-Grove boundary line: "shall run from a point located on the former uplands shoreline of the property of Ann Blee as shown on a survey by Baldwin and Cornelius, P. C. dated 1958, 10 feet southeasterly of the intersection of the northerly boundary line of the property of Gro Grove Realty Corporation *with its easterly boundary line to the nearest point on the midline of Freeport Creek*" (emphasis supplied). We conclude, however, that this description is inadequate for the purposes of determining the division line, which in this case should be defined in terms of a specific angle containing a specific number of degrees. Accordingly we remit for clarification.

The third and final deficiency involves the eleventh decretal paragraph, which states in part: "ADJUDGED AND DECLARED, that all existing pilings, floats, ramps or other structures installed, maintained or used by the parties or each of them *in the waters of the cove* apportioned herein as the riparian rights of access of other parties are encroachments" (emphasis supplied). However, depending upon the angle of the Freeport Bay Marina, Inc./Gro-Grove boundary line, certain pilings, floats, ramps or other structures installed, maintained or used by the parties or each of them in the waters abutting the cove may also be encroachments. Thus, this decretal paragraph should be clarified as well. Bracken, J. P., Brown, Kunzeman and Spatt, JJ., concur.