# CIRCUIT COURT OF BEDFORD COUNTY

Smith Mountain Lake
Yacht Club, Inc.

v.

James K. Ramaker
and Sandra W. Ramaker

Case No. CH98018964-00

James K. Ramaker
and Sandra W. Ramaker

v.

Smith Mountain Lake
Yacht Club, Inc.

Case No. CH99019108-00

BY JUDGE JAMES W. UPDIKE, JR.

August 27, 1999

The captioned matters came to be heard upon the bill for injunction filed by Smith Mountain Lake Yacht Club, Inc., and the bill of complaint filed by James K. Ramaker and Sandra W. Ramaker.

In its bill for injunction, the Smith Mountain Lake Yacht Club, Inc., requests that the Ramakers be prohibited from constructing a dock on Smith Mountain Lake. Specifically, Smith Mountain Lake Yacht Club alleges that the Ramakers' dock, which has now been constructed, extends beyond the

property line of the Ramakers and onto the property of Smith Mountain Lake Yacht Club, Inc.

In their bill of complaint, the Ramakers allege that they have acquired riparian rights to Smith Mountain Lake, and they request this Court to enter an order permitting them to construct a boat dock in accordance with a previously issued permit. The Ramakers further request this Court to order the apportionment and division of their riparian rights and to enjoin the Smith Mountain Lake Yacht Club, Inc., from interfering with the construction of their boat dock.

These cases were consolidated for trial by order entered on April 14, 1999.

Evidence was presented during a hearing on April 15, 1999, and further proceedings were deferred pending a view of the property by the Court. Counsel also requested the opportunity to submit written memoranda.

I viewed the property in question, including the Ramakers' dock, on June 17, 1999, and I have now received and reviewed the memoranda submitted by counsel.

The first issue to be addressed is whether the Ramakers have acquired riparian rights to Smith Mountain Lake. As shown on plaintiffs' exhibit 8, Smith Mountain Lake is at full pond at the 795-foot contour. Plaintiffs' exhibit 8 also clearly shows that the 795-foot contour extends from the lake and onto the Ramakers' property for a distance of 24.8 feet. For purposes of convenience I will describe this area as "the small inlet."

Section 28.2-1202 of the Code of Virginia provides in pertinent part:

> Subject to the provisions of § 28.2-1200, the limits or bounds of the tracts of land lying on the bays, rivers, creeks, and shores within the jurisdiction of the Commonwealth, and the rights and privileges of the owners of such lands, shall extend to the mean low-water mark but no farther, except where a creek or river, or some part thereof, is comprised within the limits of the lawful survey.

Section 28.2-1202(A) of the Code of Virginia of 1950, as amended (formerly § 62.1-2 and § 62-2).

Section 28.2-1200 provides in pertinent part:

> All the beds of the bays, rivers, creeks and the shores of the sea within the jurisdiction of the Commonwealth, not conveyed by special grant or compact according to law, shall remain the property of the Commonwealth and may be used as a common by all the people of

the Commonwealth for the purpose of fishing, fowling, hunting, and taking and catching oysters and other shellfish.

Section 28.2-1200 of the Code of Virginia of 1950, as amended (formerly § 62.1-1 and § 62-1).

According to the evidence, the mean low-level of Smith Mountain Lake has never been established, though Mr. Arnold testified that he would approximate such level to be at the 793-foot contour. However, as established by the evidence, and as is well known in Bedford County, the level of Smith Mountain Lake rises and falls according to seasonal conditions and demands for electricity. Indeed, the Supreme Court of Virginia, when addressing the evidence in another case involving Smith Mountain Lake, observed the following: "After being filled, however, the lake rose to a water level that generally remains within the 790-foot and 795-foot contours." *Brown v. Haley*, 233 Va. 210, 213, 355 S.E.2d 563 (1987).

The application of § 28.2-1202 to the circumstances of Smith Mountain Lake is difficult without a documented determination of a mean low-watermark and because of the manner in which the lake level varies. Indeed, when this man-made lake was designed, it was intended that the water level rise and fall for purposes of generation of electricity at Smith Mountain Dam. When water is released through the generators of Smith Mountain Dam, the lake level decreases. When the generators are reversed, and they act as pumps to return water from the lower reservoir of Leesville Lake, the water level of Smith Mountain Lake increases. These artificially induced variations in the water level of Smith Mountain Lake are compounded by seasonal conditions.

While at common law, the title to the owner of land bounded by a tidal stream extended only to the high-watermark, by statute, such fee simple title was extended to the low-watermark (now mean low-watermark). *Taylor v. Commonwealth*, 102 Va. 759, 47 S.E. 875 (1904) (decided under prior law).

The Supreme Court of Virginia has defined "low-watermark" to mean "ordinary low water, not spring-tide or neap-tide, but normal, natural, usual, customary, or ordinary low water, uninfluenced by special seasons, winds or other circumstances." *Scott v. Doughty*, 124 Va. 358, 366, 97 S.E. 802 (1919) (decided under prior law).

The Supreme Court has further discussed the distinction between the rights of a riparian owner at common law and those under Virginia law as established by statute, by stating the following:

> The right of a riparian owner to the benefits resulting from his ownership of land on navigable water is recognized both by statute and by case law.

At common law, the title of such an owner extended only to high-water mark. But an Act of Assembly adopted in 1679 (2 Hen. Stat. 456) established that "every man's right, by virtue of his patent, extends into the rivers or creeks so far as low watermark."

The present day statutes continue to recognize such right and to define the extent of its exercise. Code § 62-2, the descendant of the act of 1679, provides that, subject to the provisions of § 62-1, "the limits or bounds of the several tracts of land lying on ... bays, rivers, creeks, and shores, and the rights and privileges of the owners of such lands, shall extend to low watermark, but no farther, unless where a creek or river, or some part thereof, is comprised within the limits of a lawful survey."

Code § 62-1 provides that the ungranted beds of bays, rivers, creeks and the shores of the sea shall be the property of the Commonwealth but "may be used as a common by all the people of the State for the purpose of fishing and fowling, and of taking and catching oysters and other shellfish."

From the early case of *French v. Bankhead*, 11 Gratt. (52 Va.) 136, this court has respected and given full effect to these legislative pronouncements of the rights of riparian owners. In the *French* case, it was said that such owners "shall have, possess and enjoy exclusive rights and privileges to and along the shores" of the waters bordering their land "down to ordinary low water mark. By the common law, the title of the proprietor extends to the ordinary high water mark. The shore or that space alternately covered and left dry by the rise and fall of the tide, being the space between the high and low water marks, was in the king for the use of the public. The law of Virginia, so far at least as relates to the soil, has, as appears by the act [of 1679], been altered; and the limits or boundaries of the land extend over and included the shore, by operation of law." 52 Va. at pp. 159-160.

*Thurston v. Portsmouth*, 205 Va. 909, 911, 140 S.E.2d 678 (1965).

It is therefore my opinion that the Ramakers have acquired riparian rights to Smith Mountain Lake in the area I have described as the small inlet. When the water level of the lake is at the 795-foot contour, a portion of Smith Mountain Lake, though minuscule in size when compared to the lake's entire shoreline of 500 miles, is within the boundaries of the Ramakers' property. Pursuant to § 28.2-1200, the people of the Commonwealth may use the surface of the lake, and the underlying land, for certain stated purposes, absent evidence of a grant to the contrary. These rights of the general public, in my

opinion, extend within the area of the small inlet when the lake level is at full pond, both where the inlet is bounded by property claimed by the Ramakers and by Smith Mountain Lake Yacht Club. Moreover, Appalachian Power Company has been granted by the Ramakers' predecessor in title a flowage easement over their property to the 800-foot contour. To the extent rights are accorded the general public and Appalachian Power Company, the property rights of the Ramakers are servient to Smith Mountain Lake, at least at times when the lake level is at the 795-foot contour, or higher. In my opinion, it would be fundamentally unfair for the Ramakers to incur this burden, without also incurring some corresponding benefit. In addition, it would be illogical to rule that the Ramakers cannot access the lake from their property unless the lake essentially comes to them by rising to the level of full pond.

I also disagree with the assertion of Smith Mountain Lake Yacht Club that it owns, to the exclusion of anyone else, the property in this small inlet that is north of the Ramakers' boundary. As already stated, when the lake level is at full pond, the lake covers to the 795-foot contour both property claimed by the Ramakers and that claimed by Smith Mountain Lake Yacht Club. At this level, neither Smith Mountain Lake Yacht Club nor the Ramakers have exclusive use and possession of the land beneath the lake in the area of the small inlet, and this point would be beyond dispute if the lake constantly remained at the level of the 795-foot contour. In my opinion, if riparian rights at Smith Mountain Lake accrue and dissipate according to lake levels determined by seasonal conditions and demands for electricity, the consequences would be illogical, unfair, and chaotic, and the result would be the very situation that § 28.2-1202 and its predecessors were enacted to avoid.

I am also persuaded by Donnie Slusher's observation that surveyors in this area do not determine or designate ownership of property on Smith Mountain Lake below the 795-foot contour. As I have already stated, the policy reasons for this are obvious.

I therefore rule that the Ramakers have acquired riparian rights to Smith Mountain Lake in the area of the small inlet at the 795-foot contour. These rights, by virtue of § 28.2-1202, extend across the flatlands to the mean low-level mark, which unfortunately, has not been specifically established. Below the mean low-level mark, whatever its precise level, the property belongs to the people of the Commonwealth by virtue of § 28.2-1200 and § 28.2-1202. Of course, the Smith Mountain Lake Yacht Club, whose property also abuts the 795-foot contour in this small inlet, has acquired riparian rights in this area as well.

The next issue to be addressed is whether Smith Mountain Lake is a navigable body of water for purposes of acquisition of riparian rights. In this

regard, the Supreme Court of Virginia has stated:

> The question of navigability is one of fact. Its determination must stand on the facts in each case. The test is whether the stream is being used or is susceptible of being used, in its natural and ordinary condition, as a highway for commerce, on which trade and travel are or may be conducted in the customary modes of trade and travel on water.

*Ewell v. Lambert*, 177 Va. 222, 228, 13 S.E.2d 333 (1941).

When ruling upon the jurisdiction of the Army Corps of Engineers on Smith Mountain Lake, the United States Court of Appeals for the Fourth Circuit sustained a finding by the district court "that Smith Mountain Lake was a navigable water of the United States." *State Water Control Bd. v. Hoffman*, 574 F.2d 191 (4th Cir. 1977).

As further evidence of the navigability of Smith Mountain Lake, I note that the Court may take judicial notice of a factual matter not subject to reasonable dispute because it is a matter of common knowledge. *Griswold v. Commonwealth*, 19 Va. App. 477, 484, 453 S.E.2d 287, 290 (1995). I find it inconceivable that anyone in Bedford County, because of personal knowledge or media coverage, would be unaware of the ever-increasing boat travel on Smith Mountain Lake. Moreover, Smith Mountain Lake is known not only for extensive boat travel, but known as a location of ever-expanding commerce. Indeed, Smith Mountain Lake Yacht Club, Inc., is a well-known example of a commercial establishment located on Smith Mountain Lake. I also note that when counsel and I viewed the property in question, we were taken to the property on a boat furnished by Smith Mountain Lake Yacht Club, Inc. Finally, because the Ramakers have constructed a boat dock in the area in question, and Smith Mountain Lake Yacht Club requests removal of this dock, partially for reasons of alleged interference with navigation to and from its marina, resolution of the issue of navigability would seem to be self-evident. For these reasons, I rule that Smith Mountain Lake is a navigable body of water for purposes of acquiring riparian rights.

Having ruled that the Ramakers have acquired riparian rights to Smith Mountain Lake as a navigable body of water, the final issue to be addressed concerns the extent of their riparian rights. Because the Ramakers in their bill of complaint raised the issue of division and apportionment of their riparian rights, they are entitled to a judicial determination in accordance with the principles set forth in *Langley v. Meredith*, 237 Va. 55, 376 S.E.2d 519 (1989), and *Groner v. Foster*, 94 Va. 650, 27 S.E. 493 (1897). Though I am prepared to make this judicial determination by further review of the evidence

presented and by applying the scale indicated on the topographic study labeled as plaintiffs' exhibit 8, I prefer to hear further argument from counsel on this point. I therefore request counsel to contact my secretary to schedule an additional hearing or to arrange a schedule to address this issue in written memoranda.

### November 2, 1999

In a letter opinion dated August 27, 1999, I ruled in the captioned matter that James K. Ramaker and Sandra W. Ramaker (hereinafter the Ramakers) have acquired riparian rights to Smith Mountain Lake and that Smith Mountain Lake is a navigable body of water. I further ruled that the extent of the riparian rights acquired by the Ramakers would be determined in accordance with the principles set forth in *Langley v. Meredith*, 237 Va. 55, 376 S.E.2d 519 (1989), and *Groner v. Foster*, 94 Va. 650, 27 S.E. 493 (1897). At my request, a further hearing was conducted on October 26, 1999, concerning the application of *Langley* and *Groner* to the evidence of this case, and I wish to express my appreciation to counsel for their cooperation in scheduling this hearing, and for their arguments pertaining to this remaining issue.

At the conclusion of the hearing on October 26, 1999, each counsel received a copy of a document that I have prepared and filed in this matter as Court's Exhibit 1, which is a copy of a portion of Plaintiff's Exhibit 8.

As I stated from the bench during this last hearing, I ruled in accordance with my interpretation and application of the principles set forth in *Langley* and *Groner* that the Ramakers must remove their existing dock but that their riparian rights include the right to construct a pier five feet in width from their boundary line to the line of navigability at the point indicated on Court's Exhibit 1. To provide a record of the reasons for my rulings, I will restate those reasons in this letter opinion.

Though counsel are, of course, well familiar with the decisions rendered in *Langley* and *Groner*, I wish to quote applicable portions of those decisions to provide context to this opinion. In *Langley*, the Supreme Court of Virginia stated:

> The applicable law is clear. A riparian owner has the right to the water frontage belonging by nature to his land. This right includes, *inter alia*, the right of access from the front of his property to the navigable part of the waterway, and also the right to the soil under the water between his land and the navigable line of the watercourse. Upon this soil, the owner may erect wharves, piers, or bulkheads for

his own use, or the use of the public, subject to such rules and regulations as the General Assembly may impose for the public's protection. *Groner v. Foster*, 94 Va. 650, 651, 27 S.E. 493, 494 (1897); *Norfolk City v. Cooke*, 68 Va. (27 Gratt.) 430, 435 (1876). *Accord Cordovana v. Vipond*, 198 Va. 353, 357, 94 S.E.2d 295, 298 (1956). The enjoyment of this right is made subject by statute to the limitation that its exercise shall not result in obstruction of navigation, or in injury to private rights. Code § 62.1-164 *supra.*

In conformity with these rights, every riparian owner is entitled "to have the extent of its enjoyment upon the line of navigability of the water course determined and marked, and his proper share of the flats, or land under the water, for the purposes aforesaid set apart, and its boundaries defined." *Groner*, 94 Va. at 651-52, 27 S.E. at 494. In making this apportionment, the prime object "should be to give to each proprietor of the shore, and as directly in his front as practicable, a parcel of the land under the water of a width at its outer end upon the line of navigability proportioned to that which it has at the inner or shore end." *Id.* at 652, 27 S.E. at 494.

237 Va. at 62.

The Supreme Court then quoted the following from *Groner*:

A just rule of division is to measure the length of the shore and ascertain the portion thereof to which each riparian proprietor is entitled; next measure the length of the line of navigability, and give to each proprietor the same proportion of it that he is entitled to of the shore line; and then draw straight lines from the points of division so marked for each proprietor on the line of navigability to the extremities of his line on the shore. Each proprietor will be entitled to the portion of the line of navigability thus apportioned to him, and also to the portion of the flats, or land under the water, within the lines so drawn from the extremities of his portion of the said line to the extremities of his part of the shore. The general rule of division, therefore, is, as the whole shore line is to the whole line of navigability so is each one's share of the shore line to each one's share of the line of navigability. The lines so drawn will be parallel, or diverge, or converge, as the navigable water line happens to be equal and parallel with, or is longer, or shorter, than the shore line.

237 Va. at 63, quoting *Groner v. Foster*, 94 Va. at 652-53.

As shown on Court's Exhibit 1, I have applied the same scale indicated

on Plaintiff's Exhibit 8 (1 inch equals 10 feet) and determined the following as being the distances between certain designated points along the shoreline around the small inlet at the 795 foot contour: 72.5 feet between points B and C, this being the east shore owned by Smith Mountain Lake Yacht Club; 12.5 feet between points C and D, this being the shoreline boundary of the Ramakers' property; and 82 feet between points D and A, this being the west shore owned by Smith Mountain Lake Yacht Club. I have therefore determined the entire length of the shoreline for purposes of application of the *Groner* formula to be 167 feet.

As is further shown on Court's Exhibit 1, I have determined the distance between point B and point C (72.5 feet) to be 43.4% of the entire shoreline; the distance between point C and point D (12.5 feet) to be 7.4% of the entire shoreline; and the distance between point D and point A (82 feet) to be 49.1% of the entire shoreline.

Upon my consideration of the evidence presented and my view of the property, I have determined the line of navigability to be located along the straight line between the points designated as point A and point B on Court's Exhibit 1. By applying the same scale indicated on Plaintiff's Exhibit 8, I have determined the length of the line of navigability to be 69 feet.

As previously stated, according to *Groner*, each riparian proprietor is entitled to "the same proportion of it (the line of navigability) that he is entitled to of the shoreline." 94 Va. at 652-53. Moreover, when making this apportionment, the prime object "should be to give to each proprietor of the shore, and *as directly in his front as practicable,* a parcel of the land under the water of a width at its outer end upon the line of navigability proportioned to that which it has at the inner or shore end." 94 Va. at 652 (emphasis added).

As to the right to erect and abate private wharves, piers, and landings, Section 62.1-164 of the Code of Virginia provides:

> Any person owning land upon a watercourse may erect a private wharf on the same, or private pier or landing, in such watercourse opposite his land; provided such wharf, pier, or landing is for noncommercial purposes and navigation be not obstructed, nor the private rights of any person be otherwise injured thereby. The circuit court of the county in which such wharf, pier, or landing is, after causing ten days notice to be given to the owner thereof, of its intention to consider the subject, if it be satisfied that such wharf, pier, or landing obstructs the navigation of the watercourse, or so encroaches on any private landing as to prevent the free use thereof, may abate the same.

Code of Virginia, § 62.1-164.

To provide each riparian proprietor with proportionate riparian rights directly in front of the property owned, to the extent practicable as required by *Groner* and *Langley,* yet avoiding obstruction of navigation and injury to private rights, as required by § 62.1-164, I have applied to the line of navigability the above-stated percentages derived from proportionate ownership of the shoreline. I have determined the distance between point B and point B1 to be 29.94 feet (43.4% of 69 feet, designated as 30 feet). I have further determined the distance between point A1 and point B1 to be 5.10 feet (7.4% of 69 feet, designated as 5 feet). Finally, I have determined the distance between point A and point A1 to be 33.87 feet (49.1% of 69 feet, designated as 34 feet).

From point A1 and point B1 on the line of navigability, I have drawn lines to the boundary line of the Ramakers. As already stated, at the line of navigability the width of this area is five feet. Strict application of the *Groner* formula would require lines to be drawn from point A1 to point D and from point B1 to point C; however, because the shoreline sharply converges as it leads in a northern direction from the Ramakers' boundary, strict application of the *Groner* formula would afford the Ramakers riparian rights, in this area of convergence, above the 795-foot contour. I therefore rule that this area in which the Ramakers have riparian rights, remains five feet in width from the line of navigability to the Ramakers' boundary, where it is to be centered between point D and point C.

I further rule that in the remaining area of the small inlet below the 795-foot contour, Smith Mountain Lake Yacht Club is entitled to full riparian rights. Specifically, this area includes that which is enclosed by the lines between point A to point A1, from point A1 to point D, then from point D to point A, and also the area enclosed by the lines drawn from point B to point C, from point C to point B1, and then from point B1 to point B.

Obviously, my determination of distances has not been accomplished with precise mathematical certainty, but I have attempted to apply my interpretation of the law to the available evidence with as much certainty as I found the circumstances permitted, while adjusting the *Groner* formula as I found required by practicality and fairness. As a caveat, I wish to state that I also computed the *Groner* formula by drawing straight lines between point A and point D and between point B and point C without allowances for the meandering shoreline, and the result continued to be a width of approximately five feet for the area in which I have determined the Ramakers to have riparian rights.

I therefore order the Ramakers to remove forthwith their existing dock from the small inlet. I rule, however, that within the area designated on Court's Exhibit 1 as encompassed within the lines drawn from point A1 and point B1 on the line of navigability to the Ramakers' boundary, this being an area of five feet in width and approximately 68 feet in length, the Ramakers may construct a pier for noncommercial purposes if such pier otherwise complies with all applicable statutes and local ordinances.

Smith Mountain Lake Yacht Club is permanently enjoined from interfering with the construction of such pier and from interfering with the riparian rights of the Ramakers.

The Ramakers are permanently enjoined from interfering with the riparian rights of the Smith Mountain Lake Yacht Club.