# T. B. LANGLEY, ET AL.

## V.

# VIRGINIA MEREDITH, ET AL.

Record No. 860450

January 13, 1989

Present: Carrico, C.J., Poff,* Compton, Stephenson, Russell, Thomas, and Whiting, JJ.

---

\* Justice Poff participated in the hearing and decision of this case prior to the effective date of his retirement on December 31, 1988.

*Carl A. Eason (Wolcott, Rivers, Wheary, Basnight & Kelly, P.C.,* on briefs), for appellants.

H. Thomas Padrick, Jr.; Edward T. Caton (Anderson & Padrick; Caton & Koch, P.C., on briefs), for appellees.

COMPTON, J., delivered the opinion of the Court.

In this chancery suit, we consider the riparian rights of three owners of adjoining property which fronts on a navigable waterway. Specifically, we examine the claims of two of the owners that two individual piers interfere with their right of access to the navigable part of the watercourse.

The parties to this litigation own waterfront property on the south shore of Broad Bay, a navigable, tidal waterway lying generally east and west at the location in question in the City of Virginia Beach. Appellee Virginia Meredith, the plaintiff below, owns Unit 16, improved by a residence, in Green Hill By The Bay Condominium. Appellants T. B. Langley and Deborah B. Langley, his wife, defendants below (hereinafter, Langley), own Unit 15, also improved by a residence, in the same condominium adjoining Meredith to the east. According to the record, this condominium is different from a "conventional condominium" because each unit consisted of a building site upon which a single-family dwelling could be erected. Appellees Billy A. Franklin and Marqueta A. Franklin, his wife, defendants below (hereinafter, Franklin), own real property, improved by a residence, outside the condominium premises but adjoining Langley to the east.

On May 3, 1985, Meredith initiated these proceedings by filing a bill of complaint, amplified by an amended bill, against Langley and Franklin relying on Code § 62.1-164. The statute provides, in part:

"Any person owning land upon a watercourse may erect a private wharf on the same, or private pier or landing, in such watercourse opposite his land; provided, such wharf, pier or land is for noncommerical purposes and navigation be not obstructed, nor the private rights of any person be otherwise injured thereby."

The plaintiff alleged that defendant Langley was in the process of constructing a private pier from his property "that will not be entirely opposite [his] property and will encroach over and beyond the extended property line of your plaintiff." Plaintiff further as-

serted that if the construction was permitted to be completed, it would constitute a use of Langley's property which will interfere with the use of her property and will prevent her from having an equal proportional frontage on Broad Bay, thereby adversely affecting her right to have equal navigable access to and from her waterfront property.

The plaintiff also alleged that defendant Franklin constructed a private pier on his property which is not entirely opposite his lot and which extends over and beyond Langley's property line extended. She further alleged that Langley states he cannot construct his pier without interfering with her property rights because of Franklin's encroachment.

Meredith asked that Langley be temporarily and permanently enjoined from construction of his pier or, in the alternative, that Langley and Franklin be "required to remove their piers that unjustly encroach and interfere with plaintiff's property rights."

Franklin filed a cross-bill asserting that Langley had no riparian rights incident to his property because of the manner in which the condominium regime was established and that Langley's proposed pier, if completed, would constitute a nuisance. Franklin asked that Langley's construction be enjoined and that the court adjudicate the property rights of the parties as they pertain to the riparian rights of Franklin.

On May 9, the trial court refused to conduct a full hearing on the plaintiff's request for a temporary injunction, stating that resolution of "the issues in this cause will require a substantial amount of testimony." The court ordered that the matter be scheduled for a full hearing on all the issues. The court further ruled that because both Meredith and Franklin "promptly sought Court relief to enjoin" Langley from construction of his pier, the court would order the pier "completely" removed in the event it decided to grant either Meredith or Franklin relief.

Subsequently, Langley filed a cross-bill against Franklin asserting that Franklin's pier encroached over and beyond Langley's property line extended thereby interfering with his use and enjoyment of his property. Langley asked "that the respective rights of the parties be determined" and that Franklin be required to remove "that portion of [his] pier that extends beyond [Langley's] property line extended."

Later, Franklin filed a plea of laches to Langley's cross-bill. He also filed a "supplementary grounds of defense" asserting that

neither Meredith nor Langley had any riparian rights because their "property rights do not extend into areas around Broad Bay." In addition, Franklin filed a second "supplementary grounds of defense" contending that neither Meredith nor Langley had standing to prosecute their alleged causes of action because under the condominium declaration they never acquired title to the frontage of Broad Bay.

On February 6 and 7, 1986, the chancellor conducted an ore tenus hearing. In spite of the court's admonition to Langley made during the May 1985 consideration of the request for a temporary injunction, Langley completed construction of his pier and, according to the record, it stands in place to this day. At the beginning of the hearing on the merits, the chancellor stated, "I intend to treat the matter as if the pier had never been built."

The chancellor proceeded to hear the evidence of all parties and, after argument of counsel, ruled from the bench in favor of Meredith on her claim against Langley. In the dispute between Langley and Franklin, the court also ruled against Langley. We awarded Langley this appeal from the February 1986 "judgment order" embodying those rulings. Franklin has assigned cross-error.

The pertinent facts mainly are undisputed. In 1976, Franklin purchased his property, a pie-shaped parcel. Observing that the deed to the parcel did not convey property past the top of a bank located about 30 feet from the waterline of Broad Bay, Franklin obtained a second deed conveying that strip. He proceeded to build his pier following issuance of a permit by the Army Corps of Engineers. The pier extends approximately 185 feet from the shore of his property. It is not exactly perpendicular to the shoreline but, contrary to the permit, is canted slightly left in a northwesterly direction. An official of the Corps of Engineers testified that there was "no problem" with Franklin's pier at the time it was built.

Subsequently, development of the property adjoining Franklin to the west resulted in the establishment of Green Hill By The Bay Condominium. The condominium declaration, including a plat, was recorded in October 1982.

Meredith purchased Unit 16 in August 1983 and constructed a dwelling on the property. Langley purchased Unit 15 in March 1984 and built a dwelling on his property. With the purchase of their waterfront lots, Meredith and Langley acquired the right to have pier permits previously issued to the developer by the Corps

of Engineers assigned to them for the construction of individual piers from their property into the waters of Broad Bay. Meredith has not sought assignment of her pier permit, but Langley obtained assignment of his permit and, in April 1985, had plans drawn for construction of a pier.

Meredith and Franklin voiced opposition to Langley's plans. Meredith learned that Langley's pier would be canted to the left and would encroach on her eastern property line extended into Broad Bay. Franklin anticipated that, even though Langley's pier would be angled to the northwest, the proximity of the end of Langley's pier, which is approximately 200 feet long, would interfere with boat handling at Franklin's pier. Proposed pilings for Langley's pier would be only 28 feet from existing pilings associated with Franklin's pier.

The parties could not resolve their dispute and Langley began construction. Meredith immediately filed her bill of complaint commencing these proceedings.

The evidence shows that the northwesterly deviation of Langley's pier from the virtually east-west shoreline extends the pier in front of Meredith's property. The evidence also shows that had Langley built his pier perpendicular to the shoreline, his pier and Franklin's pier would have run together at the outer ends.

A great deal of the evidence was directed to Franklin's claim that neither Meredith nor Langley had riparian rights because they acquired no property to the water's edge. In effect, Franklin sought to show that the condominium is landlocked. An attorney, who qualified as an expert in the field of real estate title examination and condominium law, concluded from his review of title documents, plats, and the condominium instruments for Green Hill By The Bay, that Meredith and Langley probably had no riparian rights in the water of Broad Bay, or that such rights in front of their properties were shared by all owners of the condominium units.

At the conclusion of the hearing, the chancellor ruled from the bench. The court stated that, based on the expert testimony, "there is a definite cloud on this title" to the "30 to 40 feet of shoreline extending beyond" the northern boundaries of the condominium units. The court decided, however, not to rule whether Meredith and Langley owned the strip in front of their property. The court ruled, for the purpose of this case only, that Meredith and Langley "have riparian rights."

The chancellor proceeded to note that Langley "took charge," persisting in building his pier in the face of opposition and a law suit. The judge said that "if anyone's going to have to suffer the consequences, it's going to have to be him." The court decided not "to penalize Mr. Franklin because his pier was there for 10 years." The chancellor stated, "I'm going to make an attempt for everybody not to be hurt too badly because everybody's got a substantial investment."

Accordingly, the court found "that defendant Langley's pier encroaches upon plaintiff's proportional access to the navigable waterway." Thus, in the final order, the court directed Langley to remove so much of his pier "that encroaches over and upon the line of navigability proportioned as to the shoreline of plaintiff Meredith being shown from the evidence as her extended property line and therefore permitting her free and open ingress and egress to navigable water to the full width of her property lines extended into Broad Bay."

The court further ruled, as to Franklin, that Langley's remaining pier after the removal, "shall not interfere with navigability, ingress and egress to and from defendants Franklins' pier adjoining on the east as it now exists." No other rulings were made by the court.

On appeal, the main thrust of Langley's argument is that the trial court failed to afford complete relief among the parties. Langley contends the court failed to apply the correct standard in making the apportionment of the riparian rights between him and Meredith. Also, he complains that the trial court improperly permitted Franklin's pier to remain when the uncontradicted evidence established that it had been erected in the wrong location and encroached over Langley's eastern property line extended.

In his cross-error, Franklin contends the trial court erred in treating the property interests of Meredith and Langley as fee simple title owners as opposed to condominium unit owners, which unit ownership is defined and controlled by statute and the recorded condominium documents. In addition, Franklin argues the trial court erred by ruling that Meredith and Langley had standing to proceed in their actions when it was shown that they did not own the shore in front of their condominium units.

■ Franklin, however, did not object to entry of the final order. Counsel for Franklin merely endorsed the order as "Seen." Consequently, Franklin has not preserved for appeal the issues he raises

and we will consider the assignments of cross-error no further. Rule 5:25. Thus, for the purposes of this appeal only, we will consider Meredith and Langley to be entitled to riparian rights as owners of their respective properties.

■ The applicable law is clear. A riparian owner has the right to the water frontage belonging by nature to his land. This right includes, *inter alia*, the right of access from the front of his property to the navigable part of the waterway, and also the right to the soil under the water between his land and the navigable line of the watercourse. Upon this soil, the owner may erect wharves, piers, or bulkheads for his own use, or the use of the public, subject to such rules and regulations as the General Assembly may impose for the public's protection. *Groner* v. *Foster*, 94 Va. 650, 651, 27 S.E. 493, 494 (1897); *Norfolk City* v. *Cooke*, 68 Va. (27 Gratt.) 430, 435 (1876). *Accord Cordovana* v. *Vipond*, 198 Va. 353, 357, 94 S.E.2d 295, 298 (1956). The enjoyment of this right is made subject by statute to the limitation that its exercise shall not result in obstruction of navigation, or in injury to private rights. Code § 62.1-164, *supra*.

■ In conformity with these rights, every riparian owner is entitled "to have the extent of its enjoyment upon the line of navigability of the water course determined and marked, and his proper share of the flats, or land under the water, for the purposes aforesaid set apart, and its boundaries defined." *Groner*, 94 Va. at 651-52, 27 S.E. at 494. In making this apportionment, the prime object "should be to give to each proprietor of the shore, and as directly in his front as practicable, a parcel of the land under the water of a width at its outer end upon the line of navigability proportioned to that which it has at the inner or shore end." *Id.* at 652, 27 S.E. at 494.

■ Obviously, this apportionment cannot be achieved by a fixed rule of extending out to the line of navigability of the waterway the divisional lines between the owners of the uplands in the same direction that these lines reach the shore. Frequent shore curvature prevents adoption of such a rule of division. *Id.*, 27 S.E. at 494. Such a rule would apply only when the shoreline is straight, the line of navigability equal in length and parallel with it, and the divisional lines approach the shore at right angles. If the line of the shore or the line of navigability curves, or the divisional lines approach the shore at different angles, their projection in the same direction out to the line of navigability would necessarily,

and unjustly, cause them to encroach on the riparian rights of the several coterminous owners of the waterfront, and deprive one or more of them of all access to, and benefit of, the navigable part of the watercourse. *Id.*, 27 S.E. at 494.

Thus, as specified in *Groner*:

"A just rule of division is to measure the length of the shore and ascertain the portion thereof to which each riparian proprietor is entitled; next measure the length of the line of navigability, and give to each proprietor the same proportion of it that he is entitled to of the shore line; and then draw straight lines from the points of division so marked for each proprietor on the line of navigability to the extremities of his lines on the shore. Each proprietor will be entitled to the portion of the line of navigability thus apportioned to him, and also to the portion of the flats, or land under the water, within the lines so drawn from the extremities of his portion of the said line to the extremities of his part of the shore. The general rule of division, therefore, is, as the whole shore line is to the whole line of navigability so is each one's share of the shore line to each one's share of the line of navigability. The lines so drawn will be parallel, or diverge, or converge, as the navigable water line happens to be equal and parallel with, or is longer, or shorter, than the shore line." *Id.* at 652-53, 27 S.E. at 494. *Accord Cordovana*, 198 Va. at 358-59, 94 S.E.2d at 299.

In its commendable effort to arrive at an equitable solution to this controversy, the trial court failed to afford the complete relief sought by the parties. As *Groner* requires, the riparian adversaries were entitled, under the pleadings, to have the extent of their enjoyment of riparian rights upon the line of navigability of Broad Bay determined and marked, the proper share of the flats set apart, and the boundaries defined. While the focus of the allegations was upon the piers of Langley and Franklin, the respective pleadings of the parties sought definitive apportionment of the riparian rights. This the chancellor failed to do fully.

In the claim of Meredith against Langley, we conclude that the trial court substantially fulfilled its responsibility to apportion. In the controversy between Langley and Franklin, however, we hold the court failed to make the required apportionment.

In Meredith's claim, the evidence showed that her lot has frontage on Broad Bay of "98 feet more or less." The evidence further showed that the south shoreline of Broad Bay at this specific location is essentially straight. And while there was a slight conflict on this fact, there was evidence to support a finding that the line of navigability is parallel to the shore. Further, the evidence showed that Meredith's divisional lines approach the shore at right angles.

■ The trial court referred to Meredith's "line of navigability proportioned as to the shoreline . . . as her extended property line." The court ordered so much of Langley's pier that encroached over Meredith's eastern divisional line removed. Thus, under these circumstances, we hold that an apportionment sufficient to resolve the Meredith-Langley dispute was accomplished by the trial court using Meredith's eastern divisional line extended, even though, we emphasize, a complete apportionment of all her riparian rights in accordance with the *Groner* rule of division was not made properly.

■ In the Langley-Franklin dispute, the trial court only decided that Langley's "remaining pier after the removal, shall not interfere with navigability, ingress and egress to and from defendants Franklins' pier adjoining on the east as it now exists." No effort whatever was made to apportion the riparian rights of those parties. The evidence showed Langley's frontage to be "80 feet more or less." The evidence also showed that Langley's divisional lines approach the shore at right angles. The evidence further shows, however, that Franklin's lot, which has approximately 74 feet of frontage, is pie-shaped in that his eastern divisional line approaches the shore running in a northwesterly direction. In order to decide properly whether Franklin's pier, in fact, violates the riparian rights of Langley, a complete apportionment of their respective riparian rights must be made using the *Groner* rule of division.

■ One final comment is necessary in the Langley-Franklin dispute. As we have said, Franklin pled laches to Langley's cross-bill. The trial court never explicitly ruled on the plea, although the chancellor did say, "I'm not going to penalize Mr. Franklin because his pier was there for 10 years." If this is a ruling sustaining the plea of laches, it was erroneous.

While Langley had observed Franklin's pier before he purchased his property, he did not ascertain that Franklin's pier may constitute an encroachment until after he purchased his unit in

March 1984, less than two years before he filed his claim against Franklin in August 1985. Even though Franklin's pier had been in place approximately nine years, Langley did not learn of his possible claim until 1984 at the earliest. Laches cannot be applied against one who is ignorant of his rights. *Meredith* v. *Goodwyn*, 219 Va. 1025, 254 S.E.2d 74 (1979). Thus, Langley's claim was timely.

Therefore, we will affirm the trial court's action in the claim of Meredith against Langley, there being uncontradicted evidence of Langley's encroachment. Our mandate will direct Langley to remove forthwith so much of his pier that encroaches over and upon Meredith's eastern property line extended. To that limited extent, the judgment order will be affirmed.

The judgment order will be reversed insofar as it pertains to the Langley-Franklin dispute. The suit will be remanded for further proceedings consistent with this opinion, such proceedings to be based on the existing record and any additional evidence which the trial court, in its discretion, deems necessary. Upon remand, Franklin will not be precluded from raising as to Langley the issues addressed in the assignments of cross-error which were eliminated from the case for purposes of this appeal only.

*Affirmed in part,*
*reversed in part,*
*and remanded.*