# VINCENT E. ZAPPULLA

## V.

# JOHN A. CROWN, JR., ETC., ET AL.

Record No. 890744

April 20, 1990

Present: All the Justices

*Roger G. Hopper* for appellant.

*C. Jackson Simmons; Frederick S. Fisher, Assistant Attorney General (Michael M. Shelton; Mary Sue Terry, Attorney General; Dunton, Simmons & Dunton*, on briefs), for appellees.

JUSTICE RUSSELL delivered the opinion of the Court.

Vincent E. Zappulla and John A. Crown, Jr., are owners of adjoining tracts of land lying along the waters of Broad Creek, a navigable tributary of the Rappahannock River, in Middlesex County. Each owner claims riparian rights in the waters of the creek, as well as the right to use the underwater flats extending from their respective properties out to the line of navigability in the creek. This appeal presents the question whether the Marine Resources Commission (MRC), in granting a permit for the construction of piers, wharves, boat slips, and the like, has the authority to apportion the underwater flats among the adjoining riparian

owners, and whether the issuance of such a permit by the MRC is dispositive of the issue when an apportionment is subsequently sought in a court of equity.

Mr. Crown operates a marina on his Broad Creek property. In October, 1986, he applied to MRC for a permit to construct additional piers, wharves, and boat slips in order to enlarge the marina. Mr. Zappulla, as an adjoining riparian owner, opposed the application, contending that the proposed additions would encroach upon the underwater flats to which he was entitled under the doctrine of *Groner* v. *Foster*, 94 Va. 650, 27 S.E. 493 (1897). Using a study prepared by the MRC staff which purported to show the areas of the flats to which the respective owners were entitled, the MRC granted the permit to Mr. Crown.

In 1987, Mr. Zappulla brought this suit as a bill in equity "for declaratory judgment and further relief" against Mr. Crown and the MRC. In Count I, the complainant asked for a declaratory judgment as to the extent of his right of enjoyment along the line of navigability, and an allocation of his proper share of the flats between that line and the shoreline. In Count II, Mr. Zappulla prayed for an adjudication that the action of the MRC was null and void insofar as it related to his riparian rights.

Mr. Crown filed a demurrer, an answer, and a motion to dismiss. The demurrer and the motion to dismiss were based upon the argument that no appeal had been taken from the MRC's decision within the time prescribed by law,* that the decision had therefore become final, was not subject to collateral attack, and was *res judicata* with respect to the issues raised by the bill of complaint. He also filed a cross-bill praying for an adjudication of his riparian rights.

The MRC filed a demurrer raising the defense of sovereign immunity, and a motion to dismiss on the ground that it was not a necessary or a proper party to the litigation. The MRC took the position that it had no authority to apportion private rights between landowners, but only to grant permission for citizens to use the Commonwealth's "subaqueous beds." Its motion pointed out that the court of equity could, without invalidating the permit or requiring the MRC to remain a party to the litigation, grant complete relief to the parties by apportioning their riparian property

---

* The parties state, on brief, that an appeal was attempted but was dismissed for failure to comply with the procedural requirements of the Administrative Process Act, Code § 9-6.14:1, *et seq.* The record of that proceeding is not before us.

rights and, if necessary, ordering removal of any construction done under the permit which encroached upon another owner's property.

After a hearing in 1988, the chancellor entered a decree on March 27, 1989, dismissing the cross-bill and sustaining the demurrers and motions to dismiss. The court ruled that the decision of the MRC was final, that the time for appeal had expired, and "that it would be unjust to jeopardize defendant Crown's investment made after the appeal time from such decision had run, and that no collateral attack will be permitted." The court ruled with respect to the MRC that "if the Commission did anything against the riparian rights of Mr. Zappulla, it should have been appealed and now it is too late, and that because the Commonwealth has not consented to be sued, the suit is barred by sovereign immunity." We granted Mr. Zappulla an appeal.

■ We do not agree with the conclusion, implicit in the chancellor's ruling, that the MRC had authority to determine the riparian rights of adjacent landowners *inter se*. Instead, we agree with the complainant's contention, with which the MRC concurs, that the sole jurisdiction to resolve conflicting private riparian claims is vested in a court of equity.

■ We recently restated the governing principles in *Langley* v. *Meredith*, 237 Va. 55, 62-63, 376 S.E.2d 519, 523 (1989). Among the rights to which a riparian owner is entitled is the right to the underwater soil between his land and the line of navigability in the watercourse. *Id*. at 62, 376 S.E.2d at 523. Upon that soil, the owner may erect docks and other facilities, subject to the rights of the public reserved by the General Assembly, provided no injury be done to the private rights of others. *Id*.

In *Langley*, we quoted the rule laid down in *Groner* which governs the apportionment of these subaqueous flats between adjoining riparian owners:

A just rule of division is to measure the length of the shore and ascertain the portion thereof to which each riparian proprietor is entitled; next measure the length of the line of navigability, and give to each proprietor the same proportion of it that he is entitled to of the shore line; and then draw straight lines from the points of division so marked for each proprietor on the line of navigability to the extremities of his lines on the shore. Each proprietor will be entitled to the por-

tion of the line of navigability thus apportioned to him, and also to the portion of the flats, or land under the water, within the lines so drawn from the extremities of his portion of the said line to the extremities of his part of the shore. The general rule of division, therefore, is, as the whole shore line is to the whole line of navigability so is each one's share of the shore line to each one's share of the line of navigability. The lines so drawn will be parallel, or diverge, or converge, as the navigable water line happens to be equal and parallel with, or is longer, or shorter, than the shore line.

*Langley*, 237 Va. at 63, 376 S.E.2d at 523 (quoting *Groner*, 94 Va. at 652-53, 27 S.E. at 494).

■ Most significantly, we held, in *Langley*, that "every riparian owner *is entitled* 'to have the extent of its enjoyment upon the line of navigability of the water course determined and marked, and his proper share of the flats, or land under the water, for the purposes aforesaid set apart, and its boundaries defined.' " *Id.* at 62, 376 S.E.2d at 523 (emphasis added) (quoting *Groner*, 94 Va. at 651-52, 27 S.E. at 494). In *Cordovana v. Vipond*, 198 Va. 353, 357-58, 94 S.E.2d 295, 298 (1956), we followed *Groner* and held that "a court of chancery is the proper tribunal to make the apportionment and to determine the boundaries between coterminous owners." Indeed, in *Langley*, we reversed a decree for the explicit reason that the trial court had failed to discharge its responsibility to afford complete relief as required by the *Groner* rule: a determination and marking of the extent of the enjoyment to which the coterminous owners were entitled along the line of navigability, a setting apart of the proper share of the flats to which each was entitled, and a definition of the appropriate boundaries. *Langley*, 237 Va. at 63, 376 S.E.2d at 523-24.

■ Code § 62.1-3 vests in the MRC jurisdiction to issue permits for "reasonable uses of state-owned bottomlands, including . . . the placement of wharves . . . by owners of riparian lands, in the waters opposite such riparian lands . . . ." Administrative approval is required for such uses of subaqueous beds because title to the bed is vested in the Commonwealth, subject to use by the people in common, unless such beds have been conveyed by special grant or compact. Code § 62.1-1. But, as the MRC points out, its issuance of a permit determines only the rights of an applicant *vis-a-vis* the Commonwealth and the public.

▇ It is an essential part of the MRC's responsibility, in considering an application for a permit, to determine, from such evidence as may be available, whether the applicant proposes to construct his facilities "in the waters opposite [his] riparian lands." Code § 62.1-3. The agency would have no authority to issue a permit if that were not the case. But such a threshold determination by the MRC does not amount to an adjudication of conflicting private property claims.

▇ Because the MRC lacked authority to determine the riparian rights of the parties *inter se*, its action in granting a permit had no *res judicata* effect upon the claims asserted in the present case. Because the issuance of a permit had no effect on private rights, the complainant's failure to pursue an appeal under the Administrative Process Act did not give rise to the defense of laches. For the same reason, any construction work done by the defendant in reliance upon the permit did not confer any vested rights on him *vis-a-vis* other private rights. It also follows, for the same reason, that the MRC is neither a necessary party nor a proper party to this cause.

Because the chancellor erred in dismissing the bill of complaint and the cross-bill, we will reverse in part the decree appealed from and will remand the cause for an adjudication of the conflicting riparian claims of the parties, consistent with the views expressed in this opinion. To the extent the decree dismissed the MRC as a party, it will be affirmed.

*Affirmed in part, reversed in part, and remanded.*