## CIRCUIT COURT OF SPOTSYLVANIA COUNTY

Benjamin H. Cooper, III, et al.

v.

William A. Kolberg et al.

v.

John F. Zugschwert et al.

Case No. C-91–217

BY JUDGE WILLIAM H. LEDBETTER, JR.

January 22, 1992

The question presented is whether the defendants in this dispute over easement rights can bring their grantors into the suit by filing a cross-bill for breach of general warranty of title.

Because the question arises on the cross-defendants' demurrer to the cross-bill and no evidence has been taken at this juncture, the facts must be gleaned from the pleadings. All factual allegations in the pleadings and reasonable inferences from those allegations are assumed true for purposes of this ruling.

By deed dated November 9, 1968, Edna Broaddus Johnson and others conveyed a portion of their tract of land on the North Anna

River to VEPCO for the construction of a reservoir, now known as Lake Anna. In that deed, the grantors reserved for themselves, heirs, successors and assigns "the exclusive right [subject to some exceptions not pertinent here] . . . to enter upon, occupy and use for recreational or agricultural purposes any part of the land hereby conveyed to [VEPCO] which may lie above the fluctuating water line of the said reservoir . . . ." The land above the fluctuating water line of the reservoir was referred to as "shore land."

The complainants and the defendants are present owners of adjoining parcels of the former Johnson tract. Each parcel is on Lake Anna, separated from the water by shore land. In their bill, the complainants say that the defendants have erected a wire cable across the shore land, running from a point in the lake-side property line out to the water line. The complainants seek an injunction against such obstruction.

The defendants have filed an answer. In addition, they have filed a cross-bill against their grantors, the Zugschwerts, demanding that the Zugschwerts defend the defendants' "title to the exclusive use of the subject shore land" or answer in damages for breach of the general warranty of title contained in their deed. The Zugschwerts have demurred.

The demurrer sets forth three grounds. First, the cross-defendants contend that the cross-bill does not state a cause of action. Second, they contend that there has been no breach of the general warranty because there has been no eviction by a third party claiming paramount title. Third, they assert that a court of equity cannot award monetary compensation. Arguments on the demurrer were heard January 14, 1992.

The demurrer must be sustained because the cross-bill is deficient for the reason asserted in the first ground. Simply put, the cross-bill contains two numbered paragraphs alleging only that (1) the cross-defendants deeded a parcel on Lake Anna to the defendants which is "the subject of this chancery action [sic]", and (2) during negotiations, the cross-defendants agreed to convey to the defendants rights in the shore land along a line from a specified iron pin to the nearest point of water. The cross-bill does not explain how that line relates to the location of the wire cable or how the cross-defendants have breached their agreement. Further, it is unclear whether the defendants are relying on the pre-conveyance agreement reached during

"negotiations" or on the general warranty of title in the deed. The Zugschwert-to-Kolberg deed is mentioned in the cross-bill, and a copy of it is attached to the cross-bill; thus, the deed is a part of the cross-bill. Rule 1:4(i). Even so, the allegations in the cross-bill are not sufficient to state a cause of action. A cross-bill against new parties is a new suit. Rule 2:14. Therefore, allegations in the original bill are not incorporated in a cross-bill *sub silentio.*

Ordinarily, a ruling in favor of a demurrant on one ground of the demurrer obviates the need for rulings on the other grounds. Here, however, it is probable that the defendants can cure the above-cited defects in their cross-bill by amendment, and the issues raised in the other two grounds of the cross-defendants' demurrer may be raised again in this litigation. Therefore, in the interest of judicial economy, and so that this suit may be expedited, the court will address the other grounds of the demurrer.

The cross-defendants argue that there can be no breach of a general warranty of title until the grantee is evicted.

Without quoting at length from each case on the subject, the court acknowledges that many of the decisions contain language that no action will lie upon a covenant of general warranty in a deed unless there has been an eviction. However, the cross-defendants interpret the word "eviction" too narrowly and too literally. Professor Minor, author of the premier treatise on real property law in Virginia, points out that it is immaterial whether the eviction is an "actual" or "constructive" ouster, and he includes within the definition of "constructive" eviction a situation in which suit is threatened. He also refers to a "disturbance of the possession" as an eviction and cites a number of early Virginia cases for the proposition. The grantee "need not suffer an actual eviction in pursuance of court process" in order to be able to maintain an action on the covenant of general warranty. *See* II Minor, The Law of Real Property (2d Ed. Ribble, 1928) § 1055.

If the complainants prevail, they will, in essence, oust the defendants from the use and enjoyment of a portion of the shore land that the defendants contend was supposed to have been conveyed to them for their exclusive use and enjoyment by the cross-defendants. Such a result would constitute an entry and dispossession under paramount title, which in turn surely amounts to an eviction. (At one point in his argument, counsel for the cross-defendants said that the

complainants are not seeking to evict or dispossess the defendants from any portion of the shore land but are merely seeking to force removal of the wire cable erected across the shore land by the defendants. That argument must be rejected for the obvious reason. Implicit in the complainants' claim is an assertion of their right to use and enjoy that area of shore land denied to them by the cable — the same area over which the defendants claim exclusive right of use and enjoyment by virtue of their deed from the cross-defendants.)

Next, the cross-defendants argue that there has been no eviction *yet*, and an action against them cannot be maintained until such cause of action has accrued. In the context of this litigation, the court finds the position untenable. A third-party claim may be asserted before such cause of action is deemed to accrue. Virginia Code § 8.01–249(5). A third-party claim may be for contribution, indemnity, subrogation, or contract, and it may be based on *future potential liability*. Virginia Code § 8.01-281. *Also see* Rule 2:14.

The cross-defendants also contend that an action for breach of covenant of general warranty must be brought on the law side of the court, not in equity. Ordinarily, as the cross-defendants argue, relief for breach of covenant of general warranty is by action at law. Nothing is better settled, however, than that where a court of equity has jurisdiction for one purpose, it will retain jurisdiction for all purposes and do complete justice among all the parties, even in matters as to which considered alone equity would not have jurisdiction. 7A M.J., *Equity* § 12.

For these reasons, the second ground of the demurrer will be overruled.

As a third ground of their demurrer, the cross-defendants contend that equity cannot award monetary damages, an alternative prayer for relief contained in the cross-bill. Although suits for unliquidated damages generally are not entertained by a court of equity, it is axiomatic that where a court of equity has jurisdiction of the subject of the controversy, jurisdiction for compensation or damages will always attach where it is ancillary to the relief prayed for. The cases in support of this principle are too numerous to cite. *See* 7A M.J., *Equity* § 9. Therefore, the third ground of the demurrer will be overruled.

*In Summary*

The first ground of the demurrer will be sustained. The defendants may amend their cross-bill by February 7, 1992. The second and third grounds of the demurrer will be overruled. The cross-defendants will have twenty-one days to answer any amended cross-bill filed in this suit against them. The parties will proceed to take evidence on the original bill, with a view toward arguing the issues related thereto on April 13, 1992, as previously scheduled. Pursuant to Virginia Code § 8.01–281(B), separate evidence and separate arguments may be scheduled on the cross-bill, if the cross-defendants so desire.

## June 16, 1992

This is a dispute between adjacent landowners over the use of an easement located between their properties and the waters of Lake Anna.

*Factual Background*

When VEPCO dammed the North Anna River to create a reservoir now known as Lake Anna, it acquired by purchase a portion of a tract owned by Edna Broaddus Johnson and others (Johnson) on the north side of the river. The portion of the Johnson tract acquired by VEPCO was described in the deed by metes and bounds. As the water rose and the lake formed, most of the land acquired by VEPCO was flooded. However, the water never rose to the property line which separates VEPCO's acquisition from the balance of the tract retained by Johnson. Thus, a variable-width strip of land between the water line of the lake and the remainder of the Johnson tract resulted.

In anticipation of that circumstance, the strip was designated "shore land," and Johnson reserved an easement for use of the shore land. The deed, dated November 9, 1968, contains the following language:

> There is reserved to Owner [Johnson] the exclusive right, except as herein stated and subject to requirements by regulatory authority, to enter upon, occupy and use for recreational and agricultural purposes any part of the land hereby conveyed to Company [VEPCO] which may lie above the fluctuating water line of the said reservoir [Lake Anna],

hereinafter called "shore land." Subject to requirements by regulatory authority, as such requirements may apply to Owner or Company, Owner may construct, maintain and use on such shore land and beyond the same into the waters of said reservoir upon the land hereby conveyed to Company, such piers, jetties or other recreational or protective structures as are not detrimental to the development, operation and maintenance of [VEPCO's electric generating facilities] . . . but Owner shall not have the right to construct or maintain any structure for human habitation on any part of said land, and Owner shall obtain Company's approval of the type and location of such piers, jetties, recreational or protective structures before they are constructed . . . .

All references to Owner and Company shall include their heirs, successors and assigns.

The complainants and the defendants are present owners of adjoining parcels of the former Johnson tract. Each parcel is on Lake Anna, separated from the water by shore land. The evidence shows that the defendants have erected a wire cable across the shore land from a point in their lakeside property line out to the water line. The complainants, seeking an injunction against the obstruction, contend that the cable encroaches on a portion of shore land upon which they have an easement for recreational and agricultural use.

A review of the chains of title of the complainants' and the defendants' parcels discloses the following facts.

(1) *Complainants' Chain of Title*

After the Johnson conveyance to VEPCO, Johnson sold 4.5315 acres of her remaining tract to John F. Zugschwert and his wife (Zugschwert). That conveyance took place in November, 1971. By deed dated April 7, 1977, Zugschwert conveyed 2.5 acres of the 4.5315 acre parcel to David M. Lester. The Lester parcel is not involved in this litigation. On the same day, Zugschwert conveyed the balance of his 4.5315 acre parcel (approximately 2.0 acres) to Ernest L. Tressler, Dreamma D. Tressler, George L. Greco and Elizabeth A. Greco. The Tresslers and Grecos partitioned their parcel in 1978, the Grecos receiving a 1.0 acre parcel. In 1988, the Grecos conveyed their 1.0 acre parcel to the complainants.

Copies of the deeds in the complainants' chain of title are appended to the transcript of depositions taken on March 11, 1992. In

none of the deeds or attached plats is any specific reference made to the shore land adjacent to the property conveyed, except that in the 1988 deed from the Grecos to the complainants, the Grecos expressly "release . . . all their claim upon that certain parcel of shore land located between the herein conveyed parcel and the fluctuating water line of Lake Anna."

### (2) *Defendants' Chain of Title*

As noted above, Johnson conveyed 4.5315 acres of her tract to Zugschwert in 1971. In March 1972, Zugschwert acquired another 5.9236 acres of that tract from Johnson. That parcel adjoins the 4.5315 acre parcel acquired by Zugschwert the preceding year. Zugschwert sold the 6.9236 acre parcel to William A. Kolberg, Martha M. Kolberg and M.R.L., Incorporated, in 1977. In 1978, that parcel was partitioned so that the defendants received 3.002 acres.

Copies of the deeds in the defendants' chain of title are appended to the transcript of depositions taken on March 11, 1992. Nothing is said of the shore land easement in the Johnson-to-Zugschwert deed. The Zugschwert-to-Kolberg/M.R.L. deed contains this language:

> The grantors herein specifically convey all rights, title and interest in the [shore land] easement . . . . It is the intent of the grantors that the easement of the previously conveyed adjoining property be divided from the 734.6' iron pin found to the nearest point of water.

That clause is the genesis of the dispute because in reliance on it, the defendants have erected a wire cable from the 734.6' iron pin across the shore land to the nearest point of water. They claim that that line is the proper division between that portion of the shore land easement available for use by the complainants and that portion available for use by the defendants.

### Status of the Case

The complainants filed their bill on March 15, 1991. The defendants answered. Additionally, the defendants filed a cross-bill against Zugschwert, their grantor, seeking specified relief under their deed warranties in the event the complainants should prevail. The cross-defendants filed a demurrer.

After a hearing on January 14, 1992, the court sustained the demurrer in part and overruled it in part, setting forth its rulings in an

opinion letter dated January 22, 1992. Thereafter, the defendants filed an amended cross-bill, and Zugschwert responded.

On April 13, 1992, the parties submitted the case for determination of all issues raised in the bill. The parties agreed that the court had before it the pleadings and documentary evidence from which an adjudication could be made. In addition, the complainants have submitted depositions of various witnesses for the court's consideration. The defendants contend that the deeds and other documents in evidence are unambiguous, and consequently, "parol evidence should not be admitted."

Upon the evidence and arguments presented at the April 13th hearing, the court made the following rulings and announced those rulings from the bench.

1. The shore land reserved in the 1968 Johnson-to-VEPCO deed is an easement appurtenant to the then remaining lands of Johnson, not an easement in gross.

2. When Johnson conveyed 4.5315 acres of the remaining Johnson tract to Zugschwert in 1971, some portion of the abutting shore land went with that conveyance.

3. When Johnson conveyed 5.9236 acres of the remaining Johnson tract to Zugschwert in 1972, some portion of the abutting shore land went with that conveyance.

4. Whatever portion of the shore land easement that went with the 1971 Johnson-to-Zugschwert conveyance could not be reconveyed by the 1972 Johnson-to-Zugschwert deed. It had already been sold in the 1971 transaction.

5. The complainants did not have constructive notice of the division line clause in the 1977 Zugschwert-to-Kolberg/M.R.L. deed (i.e., the recital that divided the shore land easement at a line drawn from "the 734.6' iron pin to the nearest point of water") because that deed was not in their chain of title.

6. The defendants' claim of estoppel by deed is rejected.

The court took the remaining issues — specifically, the location of the dividing line across the shore land separating the complainants' easement in the shore land from the defendants' easement in the shore land — under advisement. Counsel submitted supplemental memoranda. This opinion addresses that issue.

*Decision*

As noted above, the Johnson-to-VEPCO deed contains an express reservation of easement in the shore land. No one disputes that fact. Also as noted above, the court has already ruled that the easement in question is an easement appurtenant, not an easement in gross. No one seems to seriously question that fact.

When the easement was created, the remainder of the Johnson tract constituted the dominant tenement. The servient tenement was the shore land owned in fee by VEPCO. That fact is clear from the language of the Johnson-to-VEPCO deed, quoted above.

An easement appurtenant adheres to the dominant tenement and passes with it to the grantee thereof, though not specifically mentioned. Once appurtenant, it is always appurtenant unless extinguished by one of the modes recognized by law. 1 Minor, The Law of Real Property, § 89 (Ribble, 2nd Ed. 1928); *also see* 6B M.J., *Easements* § 4.

When the dominant tenement is transferred, all privileges and appurtenances pass with the conveyance unless expressly excluded. Virginia Code § 55–50. (The Virginia statute is merely an affirmation of the common law. 1 Minor, *supra*, § 1080.) It is elementary that an easement is impliedly conveyed with the dominant tenement to which it is appurtenant when the dominant tenement is conveyed, even though no mention is made of the easement, unless express restrictions are imposed by the terms of the grant. *See*, generally, 6B M.J., *Easements* §§ 23 and 24.

When a *portion* of the dominant tenement is transferred, the owner of such portion has the right to make use of the easement appurtenant or at least such portion of the easement as is reasonably associated with the use and enjoyment of his land and is accessible to it. *See, e.g., Cushman Virginia Corp. v. Barnes*, 204 Va. 245 (1963). Almost all of the cases, and discussions in the treatises, that deal with this issue of use of an easement by owner of subdivided portions of a dominant tenement involve right-of-way easements. Thus, with some exceptions not pertinent here, the owners of each subparcel is entitled to use the right-of-way or to much of it as is reasonably beneficial to his land (provided the right-of-way can be enjoyed as to the separate parcels without any unreasonable additional burden on the servient tenement). *See* 25 Am. Jur. 2d, *Easements*, § 96.

In the right-of-way cases, it is never suggested that each owner of a subpart of the dominant tenement has the right to use a separate or discrete portion of the servient tenement (i.e., the right-of-way). By the very nature of the easement, it would be used as a whole by all owners of the subdivided portions of the dominant tenement. Thus, common sense dictates that any apportionment of a right-of-way easement must be made by reference to volume of use, not by physical division of the easement.

Here, however, the parties seem to be in agreement that such an approach cannot apply to this type of easement. This is not a right-of-way; it is for more than merely access to the water; it cannot be apportioned in the same manner as a right-of-way whereby all owners of portions of the dominant tenement would be entitled to share the use of the entire shore land on a non-exclusive basis. It follows that the shore land easement must be apportioned among the owners of abutting portions of the dominant tenement by a physical division. No one contends otherwise. Therefore, the real issue is narrow: what is the location of the dividing lines?

The original territorial extent of the easement is defined in the language that created the easement. Johnson reserved an easement upon "any part of the land hereby conveyed [to VEPCO] . . . which may lie above the fluctuating water line . . . hereinafter called 'shore land'." The tract conveyed by Johnson to VEPCO is described by metes and bounds in the deed. Therefore, to ascertain the exact extent of the shore land easement as originally reserved, one must locate the outermost boundary lines of the tract conveyed by Johnson to VEPCO at the points where those lines cross the shore land. Between those lines, which run roughly perpendicular to Lake Anna, Johnson reserved an easement upon the abutting shore land for the benefit of the remainder of her tract.

When Johnson subdivided the tract, nothing was said in the deeds about what portion of the shore land passed to the grantee of each abutting subparcel. We know, nonetheless, for the reasons explained above, that *some* portion of the shore land easement was impliedly conveyed with each division of land abutting the shore land. The defendants say that the portion of shore land easement that passed with each subdivision of the Johnson tract is a "reasonable amount" for the use and enjoyment of each such parcel. The court agrees. When an easement is not defined by definite description, it is

bounded by the lines of reasonable enjoyment in view of all the circumstances. 6B M.J., *Easement* § 24; 25 Am. Jur. 2d, *Easements* § 64.

What are the "lines of reasonable enjoyment, in view of all the circumstances," in this case?

The defendants argue that the lines of reasonable enjoyment are to be determined by reference to the intent of the parties. In developing that argument, however, they offer nothing regarding the intent of Johnson in the original subdivision of the tract; they say nothing of the parties' intentions when Johnson sold the 4.5315 acre parcel to Zugschwert in 1971; they say nothing of the parties' intentions when Johnson sold the adjoining 5.9236 acre parcel to Zugschwert in 1972; they say nothing of the parties' intentions when Zugschwert sold portions of the 4.5315 acre parcel to Lester and to Tressler et al. in 1977, and they say nothing of the parties' intentions when Tressler and Greco resubdivided their 2.0 acres, ultimately conveying 1.0 acre to the complainants. Instead, they focus on the 1977 transaction between Zugschwert and the Kolbergs and M.R.L., Incorporated, in which the line in the shore land easement was established at "the 734.6' iron pin found to the nearest point of water." That deed, and the contract of sale that preceded the deed, evince an intent on the part of Zugschwert to divide the shore land at the point therein designated, they say. Then, they contend, this must have been Zugschwert's intent all along.

The argument is untenable. Assuming that it was Zugschwert's intent in May, 1977, to divide the shore land at "the 734.6' iron pin," such intent would be immaterial as it respects the owners of the adjoining 4.5315-acre tract which Zugschwert had previously sold. The complainants, owners of a portion of the previously-conveyed parcel, are not bound by such subsequently-formed "intent," and no evidence exists that would permit the court to give retrospective effect to such "intent." Further, because the Zugschwert-to-Kolberg/M.R.L. conveyance of the 5.9236 acre parcel occurred subsequent to Zugschwert's conveyance of the 4.5315 acre parcel, under recognized principles of real property law, the Zugschwert-to-Kolberg/M.R.L. deed is not even in the complainants' chain of title.

The defendants also point to a listing of the 5.9236 acre parcel in which that parcel is said to have 440 feet of waterfront. The listing, the defendants say, shows Zugschwert's intent. That argument, too,

is unpersuasive. There is no indication who prepared the MLS listing sheet or why the reference to "440 feet of waterfront" was put there. Further, the listing concerns the 5.9236 acre parcel, not the previously conveyed 4.5315 acre parcel of which the complainants' property is a part. As noted above, any intention formed by Zugschwert with respect to the 5.9236 acre parcel cannot be retroactively imputed to the grantees of the adjoining previously conveyed 4.5315 acre parcel.

Next, the defendants argue that if the parties' intentions are not sufficiently clear, the shore land boundary should be set in the same manner that boundaries for littoral and riparian rights are established.

> A just rule of division is to measure the length of the shore and ascertain the portion thereof to which each riparian proprietor is entitled; next measure the length of the line of navigability and give to each proprietor the same proportion of it that he is entitled to the shore line; then draw straight lines from the points of division so marked for each proprietor on the line of navigability to the extremities of his lines on the shore. *Langley v. Meredeth*, 237 Va. 55 (1989).

Applying that rule to the present case, the defendants argue that one would determine the entire length of the property line; then determine what portion of this property line belongs to each owner; then determine the entire length of the water line adjacent to these parcels; and then divide the water line according to the owner's proportional share of the property line.

The short response to this argument is that this is not a littoral or riparian rights case. The rationale for the rules used to establish dividing lines between the *shoreline* and the *line of navigability of the water course* has no applicability here. The problems are not analogous. Here, the dispute involves the parties' rights to use and enjoy respective portions of an *on-shore easement*, not a question of rights in the land bed under the waters of Lake Anna. The shore land easement reserved in the Johnson-to-VEPCO deed involves the *actual use* of that strip of land by abutting landowners for a variety of recreational and agricultural purposes.

*Brown v. Haley*, 233 Va. 210 (1987), while factually similar to this case in many respects, provides little guidance for a resolution of the issue presented here. There, the Court was concerned with

whether an adjoining landowner at Smith Mountain Lake had an implied easement in a strip of land that separated his land from the waters of the lake. No express easement existed. The questions involved only the landowner's right to cross the strip for access to the water. The Court found that the landowner had an implied easement for access to the water, running with his land. Because the easement was limited to water access and did not involve the actual use of the strip for a variety of recreational and agricultural purposes as this case does, nothing was said about the precise boundaries of the easement. Obviously, it was assumed that the easement ran from the landowner's property directly to the water, for the beneficial use and enjoyment of the landowner's property. Nor was anything said about littoral or riparian rights because, as here, the issue before the court concerned an easement in shore land, not rights to land under the water.

The complainants argue that the shore land easement should be divided among the abutting landowners by extending the existing boundary lines of the abutting parcels in straight lines across the shore land to the water line of Lake Anna. No authority is cited for that proposition, and the court finds none. Admittedly, the complainants' argument is consistent with principles that apply to boundary lines in general. In ascertaining metes and bounds, straight lines are generally implied unless there is an apparent contrary intent. *See* 12 Am. Jur. 2d, *Boundaries* § 56. However, the court concludes that an extension of the complainants' and the defendants' common boundary in a straight line would not create "a line of reasonable enjoyment" and would, if followed in respect to other subparts of the Johnson tract, prove illogical and, perhaps, chaotic. Because these boundary lines do not approach the shore land on perpendicular angles, extensions of the boundaries in straight lines could result in criss-cross patterns.

The appropriate solution to the problem posed in this case is found by returning to the principle of apportionment.

"The successors to the possession of the subdivided parts of a dominant tenement are entitled to benefits substantially proportionate to the benefits the original possessor could realize from those parts while he held them in a single possession." 5 Restatement of the Law of Property (ALI 1944) § 488, Comment d. We have seen how this concept of apportionment works in regard to right-of-way

easements. Applied here, the right to use the benefits of the shore land easement must be apportioned among the abutting subparts of the dominant tenement substantially proportional to the amount of land that each abutting subpart bears to the original dominant tenement. Stated differently, the complainants and the defendants have the right to use so much of the shore land that abuts their respective parcels as the proportionate share of each parcel bears to the original dominant tenement. For example, if the complainants' parcel is 20% of the original dominant tenement, the complainants would have the right to use 20% of the original servient tenement (the shore land), and the dividing lines would be drawn to comport with that apportionment.

The complainants have failed to establish that the defendants' wire cable encroaches upon their proportionate share of the shore land. Accordingly, the relief sought in the bill will be denied. For obvious reasons, this result moots the defendants' cross-bill against Zugschwert, and the cross-bill will be dismissed.