Present:  Carrico, C.J., Lacy, Keenan, Koontz, Kinser, and
Lemons, JJ.

SMITH MOUNTAIN LAKE YACHT CLUB, INC.

v.  Record No. 000861   OPINION BY JUSTICE BARBARA MILANO KEENAN
                                        March 2, 2001

JAMES K. RAMAKER, ET AL.


            FROM THE CIRCUIT COURT OF BEDFORD COUNTY
                  James W. Updike, Jr., Judge

     This appeal is from a decree in which the chancellor held

that a certain landowner has the right to construct a dock over

partially submerged property that an adjacent landowner claims

to own.

     This dispute arose between James K. Ramaker and Sandra W.

Ramaker (collectively, the Ramakers), and a neighboring

landowner, the Smith Mountain Lake Yacht Club, Inc. (the Yacht

Club).  The properties owned by the Ramakers and the Yacht Club

respectively are in the vicinity of an inlet of Smith Mountain

Lake in Bedford County (the Lake).  The Yacht Club property is

adjacent to the Ramaker property and directly abuts both sides

of the inlet at all times, regardless of the water level of the

Lake.  The Ramaker property has about 12 feet of frontage on the

end of the inlet only when the Lake is flooded to the "full

pond" level.[1]

---

     [1]Attached to this opinion is a diagram depicting the inlet
and the two properties.

When the Ramakers began construction of a dock extending into the inlet, the Yacht Club filed a bill of complaint for injunctive relief, alleging that the Ramakers' dock extended over property owned by the Yacht Club. The Yacht Club sought to enjoin the Ramakers from constructing the dock over the property, which was partially submerged (partially submerged property). The Ramakers thereafter filed a separate bill of complaint seeking a determination of their riparian rights. The two suits were consolidated for trial.

After conducting evidentiary hearings, the chancellor concluded that the Ramakers had sufficient riparian rights to allow them to construct a dock extending over the partially submerged property into the inlet. The chancellor's holding was based on his determination that the Commonwealth, not the Yacht Club, was the owner of the partially submerged property. The chancellor also ordered that the existing dock be removed because it extended outside the riparian zone fixed by the court.

Central to this dispute is the issue of ownership of land that was flooded to create Smith Mountain Lake, an artificial lake formed when the Appalachian Power Company (APCO) constructed a dam on the Roanoke River as part of a hydroelectric project. Before the land adjacent to the Roanoke River and its tributaries was flooded to create the Lake,

certain parcels of land were condemned and APCO obtained flowage easements over other parcels from their respective landowners extending to the 800-foot elevation contour of the proposed Lake.

Both the Ramakers and the Yacht Club hold their properties subject to flowage easements that were conveyed by their predecessors in title to APCO. These flowage easements granted APCO

> the right to overflow and/or affect so much of said premises as may be overflowed and/or affected, continuously or from time to time in any manner whatsoever, as the result of the construction, existence, operation and/or maintenance of the aforesaid dam and/or power station, the impounding of the waters of said river and tributaries and/or the varying of the level of the so impounded waters by reason of the operation of said power station, including any pumping as part of such operation.

These flowage easements expressly reserved to the grantors "the right to possess and use said premises in any manner not inconsistent with the estate, rights and privileges herein granted to [APCO] . . . ."

In 1965, after Smith Mountain Lake was created, the Yacht Club purchased a 51-acre parcel of land (the Yacht Club property) through which Buttery Creek, a tributary of the Roanoke River, formerly flowed. When the Lake was created, Buttery Creek was flooded and became part of the Lake. The Yacht Club property was conveyed by a deed that referred to a

survey plat that showed the location of Smith Mountain Lake as well as the centerline of Buttery Creek as it existed before the Lake was created.

In 1998, the Ramakers purchased about 101 acres of land (the Ramaker property) adjacent to the Yacht Club property. A survey plat of the Ramaker property depicts a small, unnamed branch or creek that formerly ran through the Ramaker property and emptied into what previously was Buttery Creek.

Although APCO has flowage easements over both the Ramaker property and the Yacht Club property extending to the 800-foot elevation contour, the Lake is considered to be at "full-pond" when it reaches the 795-foot elevation contour. When the Lake is at "full pond," the Ramaker property has about 12 feet of water frontage on the inlet. The record shows that the water level of the Lake frequently drops below "full pond" and has at times fallen lower than the 790-foot elevation contour. At the 793-foot elevation contour and at all lower water levels, the Ramaker property has no frontage on the inlet of the Lake. By contrast, the Yacht Club property has frontage on the inlet, regardless of the fluctuations in the Lake's water level.

The chancellor held that, under Code § 28.2-1200, the general public is permitted to use all land underlying the surface of Smith Mountain Lake, absent evidence of a special grant or compact. Based on this authority, the chancellor

concluded that the Commonwealth owned the partially submerged property at issue, and that the Ramakers were entitled to build a dock over that property. The chancellor also noted the existence of APCO's flowage easement over the Ramaker property to the 800-foot elevation contour and stated:

> To the extent rights are accorded the general public and [APCO], the property rights of the Ramakers are servient to [APCO's rights], at least at times when the lake level is at the 795-foot contour [i.e. at "full pond"], or higher. In my opinion, it would be fundamentally unfair for the Ramakers to incur this burden, without also incurring some corresponding benefit.

The chancellor concluded that the Ramakers have riparian rights at the 795-foot elevation contour or "full pond" level because, at that level, the inlet reaches their property boundary. The chancellor stated that it would be "illogical" to rule that the Ramakers cannot have access to the Lake from their property unless the Lake "essentially comes to them" by rising to the level of "full pond."

The chancellor concluded that the Ramakers' riparian rights should be fixed in accordance with the principles set forth in Langley v. Meredith, 237 Va. 55, 376 S.E.2d 519 (1989), and Groner v. Foster, 94 Va. 650, 27 S.E. 493 (1897). In applying the Groner formula, the chancellor used the 795-foot elevation contour as the shoreline or mean low-water mark, even though the

5

court made no finding that this line was the location of actual mean low water.

After making the calculations under the Groner formula, the chancellor concluded that the Ramaker property has a riparian zone extending from the 795-foot elevation contour that is 5 feet wide and about 68 feet long, and that the Ramakers are entitled to construct a dock within this zone. At "full pond," the dock approved by the chancellor would extend directly over the partially submerged property allegedly owned by the Yacht Club. The chancellor permanently enjoined the Yacht Club from interfering with the Ramakers' riparian rights and their construction of a dock within this defined riparian zone. The Yacht Club appealed from this decree.

The Yacht Club argues on appeal that the Commonwealth does not own the partially submerged property at issue, and that the chancellor erred in reaching this conclusion, which was based on his incorrect application of Code § 28.2-1200. The Yacht Club asserts that Code § 28.2-1200 applies only to bodies of water whose beds have not been conveyed previously to a private owner. The Yacht Club notes that the submerged property at issue was conveyed to the Club's predecessors in title before Smith Mountain Lake was created and the land bordering Buttery Creek was flooded. Thus, the Yacht Club argues that the chancellor erred in ruling that the partially submerged property, which was

6

not condemned but merely is subject to an APCO easement, is owned by the Commonwealth and that the Ramakers may use this land to build their dock.

In response, the Ramakers argue that the chancellor correctly applied Code § 28.2-1200 in ruling that the partially submerged property belongs to the people of the Commonwealth because Smith Mountain Lake is a navigable body of water. The Ramakers also assert that the chancellor properly concluded that they have riparian rights allowing them to construct a dock extending over the partially submerged property at issue. They contend that because the level of the Lake rises and falls according to weather, water usage, and power needs, the chancellor properly extended their riparian rights to the 795-foot elevation contour, even though the water sometimes recedes to the point where their property does not touch the water. We disagree with the Ramakers' arguments.

The standard of review that we apply on appeal is well established. Under Code § 8.01-680, we will affirm the chancellor's decree unless it is plainly wrong or without evidence to support it. Willard v. Moneta Building Supply, Inc., 258 Va. 140, 149, 515 S.E.2d 277, 283 (1999); W.S. Carnes, Inc. v. Board of Supervisors, 252 Va. 377, 385, 478 S.E.2d 295, 301 (1996). We examine the evidence in the light most favorable to the Ramakers, the prevailing party in the circuit court. Id.

7

We first consider the issue whether the chancellor properly applied Code § 28.2-1200 to conclude that the Commonwealth owns the partially submerged property at issue. The statute provides, in relevant part:

> All the beds of the bays, rivers, creeks and the shores of the sea within the jurisdiction of the Commonwealth, not conveyed by special grant or compact according to law, shall remain the property of the Commonwealth and may be used as a common by all the people of the Commonwealth for the purpose of fishing, fowling, hunting, and taking and catching oysters and other shellfish.

This statute specifically enumerates the categories of bodies of water that are subject to its provisions. The precise words of the statute do not include "lakes" within the listed categories. Our construction of the statute is governed by the maxim *expressio unius est exclusio alterius,* which provides that the mention of a specific item in a statute implies that other omitted items were not intended to be included within the scope of the statute. Commonwealth v. Brown, 259 Va. 697, 704-05, 529 S.E.2d 96, 100 (2000); Board of Supervisors v. Wilson, 250 Va. 482, 485, 463 S.E.2d 650, 652 (1995); Turner v. Wexler, 244 Va. 124, 127, 418 S.E.2d 886, 887 (1992). Thus, we conclude that Code § 28.2-1200 does not apply to Smith Mountain Lake because the General Assembly chose not to include "lakes" in its designation of bodies of water whose beds remain the property of the Commonwealth in the absence of a special grant or compact.

We disagree with the Ramakers' argument that Smith Mountain Lake is included within the scope of Code § 28.2-1200 because the Lake is navigable. This argument effectively asks us to add words to the statute, since its plain language does not include any type of lake and makes no exception for lakes that are navigable. When the language of a statute is plain and unambiguous, we construe the statute in accordance with that plain meaning. Cummings v. Fulghum, 261 Va. ___, ___, ___ S.E.2d ___, ___ (2001); Earley v. Landsidle, 257 Va. 365, 370, 514 S.E.2d 153, 155 (1999); Ragan v. Woodcroft Village Apartments, 255 Va. 322, 326, 497 S.E.2d 740, 742 (1998). Therefore, applying the plain language of Code § 28.2-1200, we hold that the chancellor erred in concluding that the Commonwealth owns the partially submerged property at issue based on his determination that Smith Mountain Lake is included within the scope of the statutory language.

The Ramakers contend, nevertheless, that Code § 62.1-81 supports the chancellor's conclusion that the Commonwealth owns the partially submerged property. That section states, in relevant part:

> The term *"waters of the Commonwealth"* as used in this chapter shall mean . . . those parts of streams or other bodies of water in this Commonwealth which either in their natural or improved condition . . . are used or suitable for use for the transportation of persons or property in interstate or foreign commerce . . . .

9

The Ramakers assert that since Smith Mountain Lake is part of a hydroelectric generation project, the operation of which affects interstate commerce, see Vaughan v. Virginia Elec. & Power Co., 211 Va. 500, 501-02, 178 S.E.2d 682, 684 (1971), the waters of the Lake belong to the Commonwealth.

We find no merit in this argument. Code § 62.1-81 defines the term "waters of the Commonwealth" for use in Chapter 7 of Title 62.1 of the Code, and the Ramakers have not cited as authority any statute in that Chapter using this term. Moreover, the term "waters of the Commonwealth" is not at issue in this appeal, which primarily addresses the ownership of a portion of the bed of Smith Mountain Lake, and the parties do not dispute the public's right to travel over the waters of the Lake. Therefore, we conclude that the above definition is not relevant to this appeal.

After the chancellor erroneously concluded that the Commonwealth owns the partially submerged property pursuant to Code § 28.2-1200, he determined that the Ramakers had riparian rights based on Code § 28.2-1202. That section provides, in relevant part, that owners of lands bordering bodies of water designated in Code § 28.2-1200 generally have rights and privileges of ownership to the mean low-water mark. After observing that the mean low-water mark had not been determined

in this case, the chancellor substituted in its place the 795-foot elevation contour for the purpose of fixing the Ramaker's riparian rights. The chancellor concluded that the Ramakers had riparian rights over the "land of the Commonwealth" based on their 12 feet of water frontage at the 795-foot elevation contour.

By its terms, however, Code § 28.2-1202 defines the boundaries of privately owned land that is adjacent to a body of water whose bed remains the property of the Commonwealth under the provisions of Code § 28.2-1200. Since Code § 28.2-1200 does not include lakes within its provisions, Code § 28.2-1202 is not relevant to a determination of the Ramakers' property rights. Instead, this determination must be made with reference to the rights of the owner of the partially submerged property at issue separating the Ramakers' land from the navigable part of the watercourse.[2] Thus, we must examine the record to determine the ownership of that partially submerged property before we can ascertain what riparian rights, if any, the Ramakers have to build a dock across that property.

The Yacht Club's fee simple ownership of the partially submerged property is established in the record before us by the

---

[2]Based on our conclusion, we need not consider the effect of the chancellor's action substituting the 795-foot elevation contour for the mean low-water mark in making his determination of the Ramakers' riparian rights.

11

deeds in their chain of title and the survey plats depicting the Yacht Club property boundaries.  In 1960, the Yacht Club's predecessors in title conveyed to APCO the above-referenced flowage easement over the partially submerged property.  This easement did not convey fee simple ownership of that property to APCO, nor did it give APCO the right to grant others the permission to build any docks below the elevation contour of 800 feet.  As stated above, the flowage easement expressly reserved to the grantors "the right to possess and use said premises in any manner not inconsistent with the estate, rights and privileges herein granted to [APCO] . . . ."

The chancellor's ruling effectively denies the Yacht Club property rights that derive from its fee simple ownership of the partially submerged property.  That ruling is contrary to our recognition in Brown v. Haley, 233 Va. 210, 355 S.E.2d 563 (1987), of private property rights below the 800-foot elevation contour of Smith Mountain Lake in land that has not been condemned, but is subject to an APCO flowage easement.  There, we held that a landowner established an implied easement to use adjacent property retained by his grantors that was subject to an APCO flowage easement.  Id. at 221, 355 S.E.2d at 571.  Thus, the existence of such a flowage easement did not deprive its grantor from exercising the rights of fee simple ownership that were unaffected by that flowage easement.

12

The chancellor's designation of a riparian zone permitting construction of a dock extending from the Ramakers' property is contrary to the law because the dock would have to cross the Yacht Club's partially submerged property to reach the dock's designated terminus point in the water. Under Code § 62.1-164, the right to construct a dock or pier for noncommercial purposes on a watercourse is subject to the restriction that the exercise of this right shall not obstruct navigation or injure the private rights of any person. See Carr v. Kidd, 261 Va. ___, ___, ___ S.E.2d ___, ___ (2001); Zappulla v. Crown, 239 Va. 566, 569, 391 S.E.2d 65, 67 (1990); Langley, 237 Va. at 62, 376 S.E.2d at 523. Thus, we hold that a property owner may not build a pier or dock extending into a watercourse across the property of another without that owner's permission. See id. Since the Yacht Club did not give the Ramakers permission to build a dock across the Club's property to reach the navigable part of the watercourse, the chancellor's determination allowing the construction of such a dock is plainly wrong.

For these reasons, we will reverse the chancellor's decree and remand the case to the circuit court for entry of an injunction in favor of the Yacht Club in accordance with the principles and holding set forth in this opinion.

Reversed and remanded.

13